STATE OF CONNECTICUT *vs.* THE NEW HAVEN & NORTHAMPTON COMPANY.   RIER BRISTOL AND OTHERS *vs.* THE SAME.

The act of 1866 provides that no railroad company shall abandon any depot or station on its road, after such depot or station has been established for twelve months, except by approval of the railroad commissioners after public notice and a hearing had. The New Haven & Northampton Co. in 1848 constructed a railroad, which in 1849 they leased for twenty years to the New York & New Haven Railroad Co. The latter company soon after taking possession of the road built a platform for the accommodation of passengers at a place on the road which was thereafter called "Brooks's Station," and placed upon it an old baggage-car which served as a shelter for passengers waiting at the station. No agent was ever placed at the station and no tickets were sold there, nor was freight way-billed to or from that station, but to and from another station in the same town. But tickets were sold at other stations to passengers for that station, and trains were stopped to take up passengers, and trains carrying the mail stopped regularly. Held—

1. That Brooks's Station was a "depot or station" within the meaning of the statute.

2. That upon the expiration of the lease to the New York & New Haven Railroad Co. the road reverted to the New Haven & Northampton Co. in the condition in which it then was, and that the lessors were concluded by the establishment by the lessees of the station in question during the term of the lease.

3 That a mandamus would lie at the instance of the attorney for the state to compel the New Haven & Northampton Co. to re-establish the station, they having abandoned the same without the consent of the railroad commissioners.

THE first of these cases was an application by the State Attorney for New Haven County for a mandamus to compel the respondents, a railroad company, to stop their trains at a certain station on the road, and the other an application by sundry citizens, under a statute of the state, to a judge of the Supreme Court, for an order to the same effect. The cases involving the same general question were heard together in this court.*

The application of the State Attorney was as follows:

"To the Honorable Superior Court, now in session at New Haven, within and for the county of New Haven, comes Eleazer K. Foster, the Attorney for the state of Connecticut, within and for New Haven County, and respectfully represents

---

* The act of 1866, upon which the application of the State Attorney was founded, is as follows:

" Sec. 1. No railroad corporation shall abandon any depot or station, which is on its road, and in this state, after the same has been established for twelve months, except by the approval of the general railroad commissioners, given after a public hearing held at the depot in question, and of which hearing and of the intention to abandon, notice shall be given by posting the same conspicuously in said depot or station for one month previous to the hearing.

" Sec. 2. Any depot or station on any railroad in this state, which has been abandoned at any time since the first day of January, 1866, shall, upon the petition to the general railroad commissioners of thirty freeholders residing in the town where said depot or station was located, be restored upon the approval of said commissioners given after a public hearing held at the depot nearest to said discontinued depot, and after notice of said hearing shall have been conspicuously posted at the place of hearing for one month previous to the hearing."

The act of 1868, upon which the other application was based, is as follows:

" Sec. 1. Whenever any railroad company in this state shall refuse to stop any one or more of its passenger trains at any depot on the line of its railroad, any number of citizens not less than ten of the town or city in which such depot is situated, may make their application in writing to the Superior Court in the county where such depot is located, and if said court is not in session, to any judge of the Superior or of the Supreme Court of Errors, praying that said com-

that the New Haven & Northampton Company is, and for more than thirty years last past has been, a corporation duly created by the laws of the state of Connecticut, and that said company has an office for the transaction of business and is located in the town and county of New Haven, and that said corporation, by an act of the General Assembly passed May session, 1846, was duly authorized to construct a railroad from said New Haven, northerly along the line of the said company's canal, to the town of Farmington, in Hartford County, and that said company, in accordance with the terms and provisions of said act, did construct and put in operation a railroad from said New Haven to said Farmington, passing through the town of Cheshire in New Haven County, which road has been operated by said corporation since the 1st day of June, 1848, to the present time.

" And the said attorney avers that said corporation, in the year 1848, established a station, for the purpose of the reception and delivery of passengers and freight, commonly called " Brooks's Station," at a point on and along the line of the railroad in said Cheshire, and that said corporation, and all persons operating said railroad, with its consent, have from the 1st day of July, 1848, to the 1st day of August, 1869, continued said station, so established as aforesaid, and have during all that period received and delivered passengers and freight at said station.

"And the said Attorney further avers, that on the 1st day of August, 1869, and ever since that day hitherto, the said corporation has abandoned said station, contrary to the statute in such case made and provided, and has ceased to stop

pany may be ordered to stop the train or trains mentioned in said application at said depot."

Section 2d provides for the appointment of a committee of three disinterested persons who are to hear the case, upon notice given, and if they shall be of opinion that the application ought to be granted in whole or in part, are to issue an order to the company, directing it to stop its trains in the manner stated in the order, and make return of their doings to the next term of the Superior Court in the county.

Sections 3d and 4th provide for final proceedings in the Superior Court upon the report, by which the order made by the committee is to be established or set aside, and for the enforcement of the order by mandamus.

its trains, running over said road, at said station, to the great discomfort, annoyance and inconvenience of the public.

" And the said Attorney avers that the railroad commissioners have never approved of such abandonment of said station by said company, nor has a public hearing been had by them to approve of such abandonment.

" Wherefore the said Attorney moves this honorable court to issue a writ of mandamus requiring and enjoining the said corporation to discontinue its abandonment of said station, and to stop its trains, passing over said railroad, and by said station, at said station, for the reception and delivery of passengers and freight, or to signify cause to the contrary thereof to this court. And your petitioner will ever pray. Dated at New Haven, the 11th day of November, 1869."

The respondents filed the following answer:—

" The respondents, not waiving but reserving to themselves the benefit of the many errors and insufficiencies of said application and the matters therein contained, say, that they admit that the New Haven & Northampton Company is a corporation duly incorporated by the laws of the state of Connecticut, by an act of the General Assembly, passed May session, 1846, to construct a railroad from said New Haven northerly along or near the line of the Farmington canal to the town of Farmington, with liberty to extend the same on or near the line of said canal to the north line of this state.

" And the respondents aver, that while they were engaged in the construction of a railroad under said charter, from said New Haven to the village of Plainville in said town of Farmington, and before the completion thereof, they, by a valid instrument in writing, duly executed for that purpose, did demise, lease, and to farm let, to the New York & New Haven Railroad Company, a corporation duly incorporated by the laws of the state of Connecticut, all and singular the said railroad from said New Haven to said village of Plainville, with all the rights of way, depot grounds, depot buildings and fixtures, with all the other privileges and appurtenances thereto belonging, for and during the full term of twenty-one years, commencing on the day that said railroad, with all the

depot buildings, should be fully completed and finished as aforesaid, and tendered to said New York & New Haven Railroad Company, fully completed and ready for use, and terminating at the end of twenty-one years therefrom; the said New York & New Haven Railroad Company on their part agreeing to manage and operate said road in a judicious and proper and discreet manner, in good faith, so as fairly to develop its resources and to produce therefrom the greatest amount of net earnings.

" And the respondents further show, that in pursuance of said contract, they, on the first day of July, 1848, having completed said railroad from said New Haven to said village of Plainville, delivered their said railroad completed and ready for use to said New York & New Haven Railroad Company, who thereupon received the said railroad, and during the twenty-one years next succeeding, to wit, from the said 1st day of July, 1848, to the 1st day of July, 1869, the said New York & New Haven Railroad Company had the entire and absolute use, management, and control of said railroad from said New Haven to said Farmington, and passing through said town of Cheshire, to the exclusion of the respondents.

" And the respondents further say, that said New York & New Haven Railroad Company, soon after taking possession of said road, built a platform at the place which in said application is termed "Brooks's Station," for the accommodation of passengers, and placed upon or near its southerly end, an old baggage car with an opening which served as a door-way. Said car was about twelve feet long and of the width and height of ordinary baggage cars, and served as a shelter or protection from the weather. No agent was ever appointed at said station, and no tickets were sold thereat, nor was any freight ever way-billed at or to that station, but was way-billed from or to the station at Cheshire. But tickets were sold at other stations on said road to passengers for said station, and trains were stopped to take up passengers at said station when flagged so to stop, and trains carrying the mail stopped without being flagged, and occasionally, and not to exceed an average of once in every month, said New York & New Ha-

ven Railroad Company, under special contracts for that purpose, received and delivered freight of large bulk and quantity at said station. They also, when requested, left articles of small bulk, at said station.

" And the respondents further show, that during the period of said lease, and while said road was operated and controlled by said New York & New Haven Railroad Company, said railroad company did not operate said road in a judicious, proper and discreet manner, so as fairly to develop its resources, and to produce therefrom the greatest amount of net income, nor did they manage the same for the true interests of the public, but said New York & New Haven Railroad Company, during the entire period of said lease, were by the stipulations of a contract between themselves and the Hartford & New Haven Railroad Company, compelled to operate and manage, and did in fact so operate and manage said road as to protect the interests of the Hartford & New Haven Railroad Company instead of the interests either of the public or of the respondents, and so as to prevent said road being operated for the interests of the public, to the prejudice of said Hartford & New Haven Railroad Company, or so as to divert either passengers or freight from said Hartford & New Haven railroad.

" And the respondents further show that, at the expiration of said lease, to wit, on the 1st day of July, 1869, they took possession of said road and its appurtenances, and have ever since had the exclusive management and control of the same. That soon after taking possession they found that the operation of said road in a judicious, proper and discreet manner, so as fairly to develop its resources, and at the same time to secure the best interests of the public, required the discontinuance of the stoppage of their passenger trains at the flag stations on said road, and among these at Brooks's Station, so called, and they have, with this end alone in view, since the 1st day of August, 1869, discontinued the stopping of their passenger trains at said Brooks's Station.

" And the respondents further show that, since taking possession of their said road upon the only application ever made

to them to receive, or deliver freight at said Brooks's Station, they, for reasons which they deemed sufficient, declined to contract for its delivery at said Brooks's Station.

" And the respondents submit to this honorable court, that for the causes aforesaid as hereinbefore set forth, said writ of mandamus prayed for in said application should not be granted, but that said application should be dismissed, and they pray that the same be dismissed."

To this answer the attorney for the state demurred, and the case was reserved for the advice of this court.

The application of Rier Bristol and others was made under the act of 1868, to a judge of the Supreme Court, by whom a committee was appointed to hear the parties, make an order in the premises, if in their judgment such an order should be made, and report to the Superior Court. The committee reported that, after hearing the parties and their witnesses, they were of opinion that the application should be granted, and that they had issued the following order to the respondents : " To the New Haven & Northampton Company : The committee in the matter of the application of Rier Bristol and others against you, having come to the conclusion and opinion, in view of all the facts and circumstances, that said application ought to be granted, hereby direct you to stop, for the convenience of passengers, at Brooks's Station, so called, the *morning passenger train running southerly to* New Haven, and due at New Haven at about nine o'clock and thirty-five minutes, A. M., and also to stop at said Brooks's Station for the convenience of passengers, the passenger train leaving New Haven at about six o'clock, P. M., and going northerly ; and we direct costs to be paid by said company. Dated at New Haven, Oct. 16th, 1869."

The Superior Court passed an order accepting the report of the committee and establishing their doings, and the respondents brought the record before this court by a motion in error. The facts found in this case were substantially the same as in the other.

*Doolittle*, for the State, and for Bristol and others, cited *State* v. *Hartford & New Haven R. R. Co.*, 29 Conn., 538,

547 ; *English* v. *N. Haven & Northampton Co.*, 32 id., 240; *Regina* v. *Lancashire & Yorkshire Railway Co.*, 16 Eng. Law & Eq., 327 ; *S. C.*, 1 Ellis & Blackb., 228 ; *Mayor &c. of New York* v. *Lord*, 18 Wend., 131 ; *Wolcott* v. *Pond*, 19 Conn., 604 ; Sedgw. on Const. & Stat. Law, 361.

*J. S. Beach*, for the respondents.

1. Both the statutes under which the proceedings in the two cases are brought, are intended to guard and secure the interests of the public as against the antagonistic private interests of the corporations. But they both properly contemplate that a station may be abandoned, or that a company may discontinue stopping a passenger train at a depot, not only without detriment to, but in furtherance of the public interests. And each statute provides a tribunal for the determination of this question as a pre-requisite to the issuing of any judicial mandate. Where there are different statutes relating to the same subject matter, though made at different times, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. *Rex* v. *Loxdale*, 1 Burr., 447 ; 1 Swift's Dig., 12.

2. The court will not, at the instance of the state attorney, grant a mandamus, where it is conceded that the best interests of the public will be promoted by withholding such mandate. Angell & Ames on Corp., § 698. Here the answer of the respondents to the application for the mandamus avers, and the demurrer admits, that they " found that the operation of said road in a judicious manner, so as fairly to develop its resources, and at the same time to secure the best interests of the public, required the discontinuance of the stoppage of the passenger trains at the flag stations on said road, and among them at Brooks's Station, so called ; and they have, with this end in view, since the 1st day of August, 1869, discontinued the stoppage of their passenger trains at Brooks's Station."

3. Where the charter of a corporation, or the general statute in force and applicable to the subject, imposes a specific duty, either in terms, or by reasonable implication, and

there is no other specific or adequate remedy, the writ of mandamus will be awarded. But if the statute or the general law of the land afford any other specific and adequate remedy, it must be pursued. Redfield on Railways, 456; Moses on Mandamus, 117; *Louisville &c. R. R. Co.* v. *The State*, 25 Ind., 177. The act of 1866, under the first section of which the application for a mandamus is brought to restore an abandoned station, provides in its second section a specific and adequate remedy for such abandonment. The two sections construed together mean, that if any railroad company shall abandon a station which has been established by them for a period of twelve months, or, if the abandonment occur after the 1st day of January, 1866, then irrespective of the period it has been so established, the railroad commissioners may, upon application, restore such station. Any other construction would involve consequences disastrous alike to the public and to the company.

4. There is not and never was at "Brooks's Station," so called, any such station as is contemplated in the act of 1866, or any such depot as is contemplated in the act of 1868. It was not a freight station. The record finds "that no freight was ever way-billed to or from it, but was way-billed from or to the station at Cheshire." It was not such a depot or station as is required by the act of 1866, because the "posting a notice conspicuously in said station or depot," could not be complied with. A depot, within the ordinary meaning of that term, —and the legislature must be deemed to have used it in that sense,—involves buildings for the accommodation of passengers, and some sort of facilities for the procuring of tickets thereat. At this station there was no agent, no tickets were ever sold, and the only structure was a platform, with an old and dilapidated baggage car upon it. It would not come even within the term "passenger station," as used in the act of 1867, providing under a penalty for the construction of "suitable water closets" at such stations. Acts of 1867, p. 110. There is a well understood distinction, recognized both by the public and railroad companies, between flag stations and ordinary depots or stations; and legislation regu-

lating the latter, cannot fairly, by implication merely, be construed to include the former.

5.  The defendants have not, within the true intent of the act of 1866, abandoned this station.  The act assumes, what the word " abandon" of necessity implies, that the establishment of the station must precede its abandonment.  The establishment and the abandonment must be under the same authority.  The defendants cannot be charged with abandoning what they never have established or authorized to be established.  They did not establish this station, nor was it done by their authority, or in their interest, or that of the public.  Their lessees, who had " the entire and absolute use, management and control of the road," established it for their own purposes, and in violation of their contract " to operate the road in a proper, judicious and discreet manner."  To bring the abandonment within the statute, the defendants must have possessed, and neglected to exercise, the right of discontinuing the station for a period of twelve months after its establishment.  Neither individuals or the public can, as against a lessor, having no possession or right of possession to property, acquire rights therein, originating in his presumed acquiescence and permission.  The defendants, immediately after acquiring the power to discontinue the station, exercised the right.

SEYMOUR, J.  These two cases are closely related to each other and were argued together, and will be considered as parts of one case.

The first is an application for a mandamus, to which an answer was filed, to which answer the attorney for the state demurred, and the questions reserved for the advice of this court arise on the demurrer.

The application is based on the statute passed in 1866, which in substance provides that no railroad corporation shall abandon any depot or station which is on its road in this state after the same has been established for twelve months, except by the approval of the railroad commissioners.  The complaint is for an alleged violation of this statute in respect to what is called " Brooks's Station," and the first question is,

whether upon the facts appearing in the answer and admitted by the demurrer that place is a depot or station upon the respondents' road, within the intent of the statute. The answer sets forth " that there was a platform there for the accommodation of passengers, connected with which platform was an old baggage car with an opening which served as a doorway, the car being about twelve feet long and of the width and height of ordinary baggage cars and serving as a shelter or protection from the weather. No agent was ever appointed at said station and no tickets were sold thereat, nor were any freight-bills ever way-billed at or to that station, but were way-billed at or to the station at Cheshire ; but tickets were sold at other stations on said road to passengers for said station, and trains were stopped to take up passengers at said station when flagged so to stop, and trains carrying the mail stopped without being flagged.    Occasionally under special contracts freight was received and delivered at said station."

The words of the statute are " depot or station."    A mere station falls within the letter of the law, but to come within its spirit the station must be one at which trains stop not merely for wood and water but for the transaction of the ordinary business of the company, the receiving and delivering of freight and passengers.    Now it is true that this Brooks's station is a humble one, not important enough to employ at it a station-master, nor of sufficient importance to be made a regular stopping place for all trains, yet it is a place where heretofore, for a period of about twenty years, passengers could always take the cars and where they could always be left, where a shelter was provided for them while waiting for the trains and where a platform was built at which freight could be received and delivered. It had a name as an acknowledged station on the road for which tickets were sold.    Business would naturally cluster around such a station.    The object of the statute is to prevent railroad companies from arbitrarily changing their places of business on the road to the prejudice of those who, relying on the permanency of such places, shape their business accordingly.    We think we ought so to construe the statute as fairly to carry

out the object of its makers.   Where there are reasonable grounds for changes the approval of the railroad commissioners can doubtless be obtained.   The business at this station was the same in kind as at those of more importance.   It is true all the trains did not stop there unless flagged to do so, but the mail train did stop regularly, and being a place where passengers were received and left and freight deposited it was a depot or place of deposit, and as such entitled to the protection of the statute, falling as we think it does within the letter and spirit of the law.

The next question which arises is, whether the respondents have abandoned Brooks's Station, and they claim that the station was never established by them and that they therefore cannot properly be charged with its abandonment:   It seems the road was run by the respondents' lessees until July, 1869. From 1848 to 1869 the station had been used by the lessees in the manner hereinbefore stated.   Since August 1st, 1869, the respondent corporation, having themselves resumed the running of the road, have discontinued the stopping of their trains there.

The statute forbids the abandonment by a railroad company of any depot or station on its road in this state after the same has been established for twelve months.   We think the statute applies to cases where the depot is in fact established, and does not concern itself with the question whether established by the corporation which abandons it or by its predecessor in the management of the road.   The present occupants of the road are so far bound by the acts of the former occupants that they cannot without the consent of the railroad commissioners abandon stations which have in fact become established as such.   If the lessees of the road improperly established the depot, as the respondents claim they did, the railroad commissioners have adequate powers to give immediate relief.

It is next claimed by the respondents that a mandamus is not the proper remedy.   But the duty imposed by the statute is a corporate duty, of such a nature that its nonperformance affects the public, and the remedy by mandamus is appropri-

ate unless the public have, as the respondents claim they have, an adequate and specific remedy in the second section of the act. On examining that section however it will be found to apply to cases of abandonment of a depot or station after January 1, 1866, and before the passing of the act. The first section of the act is wholly prospective; the second is wholly retrospective, and furnishes no remedy whatever for the neglect which is the subject of complaint before us.

It was also urged that the answer of the respondents alleges that they found that the operation of their road in a judicious, proper and discreet manner, so as fairly to develop its resources and at the same time secure the best interests of the public, required the discontinuance complained of, and that the demurrer admits these allegations to be true; and that upon such a state of facts as appears by the answer the application ought not to be granted.

It is true that a demurrer admits the truth of all the allegations demurred to which are properly pleaded and which are relevant to the issue. The statute refers all questions of public and private interest connected with the continuance and abandonment of railroad stations to the railroad commissioners, and railroad companies may not, without consent of the commissioners, in disregard of the statute abandon a station, and then on application for a mandamus tender an issue to be tried by the court upon the interests public and private involved in the abandonment, and thus transfer to the courts a question which the statute has committed to another tribunal. The allegations therefore in the answer which are relied on by the respondents are not properly in issue before the court and are therefore not admitted by the demurrer.

The Superior Court is advised to render judgment that the respondents' answer is insufficient. The application is for an order in its terms more general than is warranted by the facts as they appear in the pleadings. The Superior Court will make the appropriate order, and will be guided in that duty by the proceedings in the other of the two cases under consideration, that of Bristol and others against the same New Haven and Northampton Company.

State of Conn. *v.* New Haven & Northampton Co.—Bristol *v.* The Same.

This last mentioned case is founded on a statute of 1868, which provides in substance that when any railroad company shall refuse to stop at any one or more of its passenger trains at any depot on the line of its railroad, any number of citizens not less than ten, of the town, &c., may make application to the Superior Court, or to a judge in vacation, praying that the company may be ordered to stop the trains mentioned in the application at such depot. The second section provides for the appointment of a committee, &c. The application was heard by a judge in vacation, who found the facts upon which the questions before us arise, the principal matter in dispute being whether there was or was not a depot at Brooks's station in Cheshire within the meaning of the statute.

The judge found *pro formâ* that there was such depot there and appointed a committee by whom an order was made requiring certain of the company's trains to stop there. The report of the committee was returned to the Superior Court and accepted, and the case comes to this court by motion in error. The decision and proceedings in the former case substantially settle this case. The facts as to the depot are found here in about the same terms as they appear in the former case. By the proceedings in that case the depot or station is restored to its condition as such, but under the act of 1866 no power is conferred upon the court or railroad commissioners to direct how many and which trains shall stop at the station. The act of 1868 confers that power on the committee of the Superior Court and by the proceedings now under consideration that power has been exercised; and it having been decided in the former case that there is a depot at Brooks's station, and the Superior Court having been advised to order the company in general terms to continue that depot, the object of the present proceedings is simply to determine what privileges that depot shall enjoy in respect to the number of trains that shall stop there.

We refer to the former case as giving the reasons for regarding Brooks's station as a depot duly established so as to be entitled to the benefit of the two statutes of 1866 and 1868,

and, no other questions being raised, we are of opinion that there is nothing erroneous in the action of the Superior Court accepting and establishing the report of the doings of the committee, and the judgment of the Superior Court is therefore affirmed.

In this opinion the other judges concurred.