THE STATE vs. THE NEW HAVEN & NORTHAMPTON COMPANY.

A proceeding by mandamus is an "action at law" within the meaning of the statute, (Gen. Stat., tit. 1, sec. 189,) which provides that, whenever any action at law shall be tried by the Superior Court without a jury, the court shall, upon the motion of either party, find the facts upon which its judgment is rendered and make the finding a part of the record.

Where, upon a proceeding by mandamus to compel a railroad company to resume its use of a station which it had abandoned, the question was whether the place in question was a station within the statute applicable to the case, it was held that it was a question of mixed law and fact, and that a decision by the court below that upon certain facts found the place was a station, could be reviewed by this court.

Where the place claimed to be a station was a mere platform at which certain daily trains had stopped to take or leave passengers, but the railroad company had never sold tickets to or from the place and kept no office or agent there, and had never placed it in their list of stations or on their time tables, it was held not to be " a station" within the meaning of the statute which forbids a railroad company to abandon a station without the consent of the railroad commissioners.

APPLICATION by the attorney for the state for a mandamus to compel the respondents, a railroad company, to resume the use of a station on their road which they had abandoned; brought to the Superior Court in Hartford County, and heard before *Pardee, J.*

The act of 1866 provides that "no railroad corporation shall abandon any depot or station which is on its road, and in this state, after the same has been established for twelve months, except by the approval of the general railroad commissioners, given after a public hearing held at the depot or station in question, and of which hearing and of the intention to abandon notice shall be given by posting the same conspicuously in said depot or station for one month previous to the hearing."

The petition alleged that the respondents in the year 1850 had established a station, known as " Allen's Station," within the town of Avon, on their railroad, for the purpose of receiving and delivering passengers and freight, and that the same had been so used as a station from that date to the 1st day of August, 1869, when the respondents discontinued its

use and abandoned it, and had ever since continued to abandon it, without the approval of the railroad commissioners and without any hearing on the matter; and prayed for a mandamus requiring the respondents to resume its use as a station or show reason to the contrary.

The respondents in their return denied that such a station was ever established or existed.

The following facts were found by the court, and the finding was made a part of the record.

On the 1st day of July, 1848, the respondents leased their railroad to the New York & New Haven Railroad Company, which corporation took possession of and managed the same until the 1st day of July, 1869. During the whole of this time there was a platform built by the company for the accommodation of passengers at the place described in the petition as "Allen's Station," which has been so called from that time, and it was the practice of the New York & New Haven Railroad Company to cause the morning train down and the evening train up to stop at the platform, to receive and deliver passengers, with their baggage, whenever a flag was displayed at the platform, or passengers on the cars notified the conductor that they wished to stop there.

The railroad company provided a flag to stop the trains by day, and a lantern to be used for the same purpose at night, which was kept at an adjoining house.

There was no depot or building of any kind for the protection of passengers, but the owner of an adjoining house allowed passengers to take shelter in his house if they desired; but this was not by any arrangement with the railroad company, but only for the accommodation of the people of the neighborhood.

There were never any tickets sold to or from this place. If persons desired to stop or get on there, they purchased tickets to or from the station next beyond this place, and paid full fare to or from those stations. Upon the notices, advertisements, placard, time-tables, and other papers of the company, this place was not mentioned at all, but it was known at all stations upon the railroad, and by the employ-

ees of the same, as a stopping place by the name of "Allen's Station," and baggage received at other stations belonging to passengers for Allen's Station was marked with a mark designating this station.

No entry was made in any books of the company of this place as a station, or any account kept of the receipts there; they were all charged as of the station beyond.

There were on the road other flag stations, some of which were so marked on the time-tables of the road, and to which tickets were sold, and others of which were not so marked, but were used in a manner similar to Allen's Station. This place was never used as a freight station.

On the 1st day of July, 1869, the lease to the New York & New Haven Railroad Company ended, and the respondents assumed control of the road, and forthwith ceased to stop any train at the place so known as Allen's Station, without any approval by the railroad commissioners, and so continued till the commencement of this suit.

Upon these facts the respondents requested the court to find, as matter of law, that under the proper construction of the statute the place was not a depot or station, and that upon these facts the respondents had a right not to stop their cars at the place in the manner in which they had done; but the court refused so to hold, and held that under the act, the place was a depot or station, and that the respondents had no right so to cease stopping their cars thereat; and the court passed the following judgment:

"Whereupon it is considered by this court that this court will award a peremptory mandamus commanding said respondents to discontinue their abandonment of said station, and to stop their trains passing over said road at said station, not less than one passenger train going north and one passenger train going south daily, upon the exhibition of a flag at said station, and upon the request of passengers wishing to get off at said station, for the reception and delivery of passengers and their luggage."

The respondents brought the record before this court by a motion in error, assigning as error, 1. That the court erred

in holding that, upon the facts found, the place in question was a station or depot within the meaning of the statute. 2. That the court erred in ordering a peremptory mandamus to issue, specifying that one passenger train going north and one going south, daily, should stop at said place, inasmuch as it was not within the province of the court in a proceeding of this kind to specify what or how many trains should stop at any place or station on the railroad.

*Perkins* and *W. C. Case*, for the plaintiffs in error.

*Hamersley*, for the defendant in error.

PARK, C. J. We entertain no doubt that a proceeding by mandamus is an action at law within the meaning of the statute, which declares that "whenever any action at law shall be tried by the Superior Court without a jury, said court shall find, upon the motion of either party, the facts upon which the judgment of said court is founded, and cause such finding to become a part of the record." Gen. Stat., tit. 1, sec. 189. The writ of mandamus is one of the proceedings at common law. Our statute provides that "the Superior Court may issue writs of mandamus in cases in which they may by law be granted, and proceed therein and render judgment according to the course of the common law." Gen. Statutes, tit. 1, sec. 372. We think, therefore, whether a proceeding by mandamus may technically be called an action at law or not, it is a proceeding embraced by that term in the statute referred to.

It is claimed on the part of the state that, inasmuch as the defendants in the present case did not state the facts concerning the place called "Allen's Station" in their return, but contented themselves with a general denial of the allegation that there was such a station established by the defendants, the question at issue between the parties was one of fact, and that the court below, having found the issue in favor of the State, decided the question as one of fact, and that therefore there can be no review of the question by this court. We do not so regard the question. The issue between the parties

in this part of the case, was, whether there was a station at the place in question that came within the meaning of that term as used in the statute. The State alleged that there was, and the defendants denied the allegation. The burden was upon the State to show, not only the facts with regard to the place in question, but also that those facts constituted the place a station within the meaning of the statute. The question was one of law and fact combined, and could not have been decided wholly as a question of fact. Furthermore, the record discloses that the court considered the question in its two-fold character. The facts were first ascertained, and upon these facts the defendants insisted as matter of law that the place did not come within the provisions of the statute, which claim was overruled by the court. Complaint is now made of this ruling, and it matters but little, before us, in what form the facts with regard to the place appear, whether upon the record in the finding of the court, or upon the record in the return made by the defendants; in either case, the facts appearing, the ruling of the court upon those facts is manifestly the subject of review.

The remaining question in the case is, do the facts as they appear of record constitute the place a depot or station? In the case of *The State* v. *The New Haven & Northampton Co.*, 37 Conn., 153, the court considered themselves as going to the verge of the law in holding that the place called " Brooks's Station " was a station within the meaning of the statute. In that case much reliance was placed upon several important facts, none of which appear in the case under consideration. One of these was that the defendants' predecessors in the management of the road had been in the habit, for a long period of time, of stopping their mail trains regularly at Brooks's Station, just as they did at other stations on the road. Another was that passengers were ticketed to the place, and at times freight was delivered and received there. A further important fact was, that the railroad company treated the place as a station, placing it on their time tables as such, and on their other lists of stations. Shelter was also provided for passengers while waiting for trains.

These were important facts, and distinguish that case from the present one. The railroad company never treated this place as a station. It never appeared on any of their time tables or lists of stations; and passengers were never ticketed to it, but always to the station beyond. No transactions at this place appeared on the books of the company, but all dealings with it were regarded as having taken place at the station beyond, and so appeared on their books. These are important considerations, and show that the company never intended to establish a station at this place.

We are satisfied that the court below erred in holding that the place in question was a depot or station within the meaning of the statute.

We think, also, that even if the place was a station within the meaning of the statute, the court erred in its order issuing the peremptory mandamus, in requiring that not less than one passenger train going north and one passenger train going south, should stop daily at the place in question upon the exhibition of flags, &c. It was said in the argument that this requirement could do the defendants no harm, for if they should use the place at all as a station they could not run any fewer trains than the number required, and hence that a requirement of that extent was necessarily involved in the order to desist from their abandonment of the place as a station. We do not so understand it. We can not know but that the proper tribunal to determine this question would decide, under all the circumstances of the case, that one passenger train going north and one going south on alternate days would be sufficient. It is manifest that the court had no jurisdiction over that question. The order should have been in general terms, that the defendants should cease their abandonment of the station, and every thing else should have been left to the tribunal provided by the statute. *State* v. *New Haven & Northampton Co.*, 37 Conn., 153.

There is manifest error in the judgment complained of.

In this opinion the other judges concurred; except PARDEE J., who having tried the case in the court below did not sit.