# Cases

THE PEOPLE OF THE STATE OF NEW YORK, Respond-
ENT, *v.* THE NEW YORK, LAKE ERIE AND WESTERN
RAILROAD COMPANY, Appellant.

*Duty of a railroad company to furnish suitable passenger and freight-houses at a
station — when the performance of such duty will be enforced by* mandamus.

A railroad company, organized under the general laws of this State relating to
that subject, is charged with the duty of providing a structure, known as a
depot building for the use and accommodation of passengers and freight, at
a station where it regularly stops its trains for the purpose of permitting
passengers to leave and take the cars, and to discharge and receive property
for transportation.

The duty so imposed upon such a company is not an absolute one, but is dependent
upon circumstances which render such an act on the part of the company both
reasonable and necessary for the accommodation of the public.

It may ordinarily be assumed that the discretion of the company has been prop-
erly exercised, but when it appears that the facts and circumstances exist which
require the performance of the duty, then the duty ceases to be discretionary
and becomes an imperative one, the performance of which will be enforced by
a writ of *mandamus.*

In this case it was held that a writ was properly issued, upon evidence showing
that a large amount of freight was annually received and shipped, and that a
large number of passengers arrived and departed from a station on the respond-
ent's road at the village of Hamburgh; that the structure at that station was
entirely inadequate for the accommodation of the passengers and freight, and
that by reason of such inadequate accommodations serious damage was occa-
sioned to a large number of persons doing business with the defendant there.

APPEAL from an order of the Erie Special Term, directing the issue of a peremptory writ of *mandamus* requiring the defendant to construct and maintain a suitable depot building at the village of Hamburgh, in the county of Erie.

The defendant, on the 1st of August, 1880, became the lessee of the Buffalo and Southwestern railroad, for the term of the existence of the lessor. The village of Hamburgh has a population of 1,200, and that railroad passes through it. The village is doing a large freight and passenger business, and the trains run by the defendant over the Buffalo and Southwestern railroad, under the lease, stop at and within the bounds of the village, for the purpose of receiving and transporting persons and property over it. A large amount of freight is annually received and shipped, and a large number of passengers arrive and depart from that place, and a depot building for the receipt and shipment of freight and the accommodation of passengers is maintained by the defendant at the village of Hamburgh. The depot building is constructed of rough hemlock boards, and is only about six feet high, with a waiting-room five by twelve feet, and a freight department eight by fourteen feet, and its capacity is entirely inadequate for the purposes of waiting-rooms for passengers arriving upon trains at, or awaiting the departure of trains from, the village, and for the storage and care of freight sent there for shipment over such railroad; and these inadequate accommodations have been, and continue to be, a matter of serious damage to large numbers of persons doing business at such station with the defendant.

*E. C. Sprague*, for the appellant.

*D. O'Brien*, attorney general, and *Charles F. Tabor*, for the respondent.

BRADLEY, J.:

The fundamental proposition to be first considered is whether the relief sought by the plaintiff is found in the relation of the defendant to the public, and in the powers with which it is vested, or is dependent upon statutory duties imposed. At common law the defendant, as a common carrier of passengers and freight, is required, within reasonable regulations, to receive, carry and trans-

port upon its cars all persons who may seek passage and all property offered for transportation, and the duty rests upon the carrier to provide means, to a reasonable degree, for the safety of such carriage and transportation and for the comfort of the persons transported, and to furnish reasonable means and facilities for the delivery and receipt of property for shipment, and for persons to take passage upon and depart from its cars.

But our attention has not been called to any rule of the common law which imposes the duty upon the carrier of supplying warehouses or depot buildings for the comfort or accommodation of persons in waiting for the opportunity to be carried, or for the reception or storage of property which may be delivered for carriage, or for the temporary deposit of it at the place of consignment. The responsibility is with the carrier and is in the nature of that of insurance from the time the property is received until delivery to the consignee, or until the expiration of a reasonable time for him to receive and take away the goods. And in the meantime the care required of the carrier is for its own protection against absolute liability from loss or injury of the property. And thereafter, until taken by the consignee, the ordinary care required of the carrier imposes upon it a duty also for its protection from liability.

These considerations at common law are matters arising between persons and the carrier, and do not, we think, impose upon it duties in behalf of or to be enforced by the public as incidents to the relation of common carrier in respect to the transportation of persons and property.

The remedy in view by this proceeding must depend upon the statute. And for the purposes of the question here we think the defendant, as lessee, assumed the duties and took the powers of the Buffalo and Southwestern Railroad Company in respect to the road in question. That company was organized pursuant to the general laws of this State on the subject and became subject to their provisions. By chapter 140, Laws of 1850, it is provided that a company may be formed " for the purpose of constructing, maintaining and operating a railroad for public use in the conveyance of persons and property " (sec. 1); that it shall have the power " to purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its railroad,

and the stations and other accommodations necessary to accomplish the objects of its incorporation.  *  *  *  To erect and maintain all necessary and convenient buildings, stations  *  *  *  for the accommodation and use of their passengers, freights and business.   To regulate the time and manner in which passengers and property shall be transported" (sec. 28, subs. 3, 8, 9, Laws 1880, chap. 133); and that if unable to agree with the owner for the purchase of any real estate required for the purpose of its incorporation, it shall have the right to acquire it in the manner prescribed (sec. 13, chap. 140 of 1850), and may afterwards acquire the necessary additional real estate for like purpose (Laws 1881, chap. 649); and that "every such corporation *shall* start and run their cars for the transportation of passengers and property, at regular times, to be fixed by public notice, and *shall furnish sufficient accommodations for the transportation* of all such passengers and property as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting, and at junctions of other railroads, and at the usual stopping places established for receiving and discharging way passengers and freights for that train; and *shall* take, transport and discharge such passengers and property at and from and to such places on the due payment of the fare or freight legally authorized therefor." (Sec. 36, Laws 1867, chap. 49.)

The people of the State gave to the railroad company its corporate franchise and vested it with the extraordinary power of acquiring and taking the title and possession of property by the aid of judicial proceedings, and without the consent of the owners, for the purposes of its incorporation.

This right of eminent domain was given and taken for the public uses only, and could not be given or taken for any other purpose, and as a consequence the service of the company, in the exercise of its corporate powers, is public, and the power to perform such service is held by it in trust for the people, to whom it is responsible for the manner or failure of its exercise.   And if the corporation refuse to perform a plain and essential duty to the public they may require its performance by their writ of *mandamus.*   (*Railroad Com'rs v. P. and O. C. R. R. Co.*, 63 Me., 269; *State ex rel. Com'rs v. Zanesville and M. R. R. Co.*, 16 Ohio St., 308; *State v. R. R. Co.*, 37 Conn., 154; *Cambridge v. R. R. Co.*, 7 Met., 70; *Rex v.*

*Severn R. R. Co.,* 2 B. & Ald., 646; *Regina* v. *Bristol Dock Co.,* 2 Ad. & E. [N. S.], 64; *Union Pacific R. R. Co.* v. *Hall,* 91 U. S., 343; *People* v. *Albany and V. R. R. Co.,* 24 N. Y., 261; *People ex rel. Green* v. *Dutchess and Columbia R. R. Co.,* 58 id., 152; *People ex rel. Garbutt* v. *Rochester and State Line R. R. Co.,* 76 id., 294; *People ex rel. Kennedy* v. *Manhattan Gas-Light Co.,* 45 Barb., 136; *People* v. *N. Y. C. and H. R. R. R. Co.,* 28 Hun, 543.)

This responsibility, to the public as such, arises out of the relation produced by the corporate grant which is accepted from the State sovereignty, and is taken subject to the attending conditions, and while no such contract springs out of the grant as to require the exercise of the rights given by it, but the failure to do so results in forfeiture only, yet when the corporation makes use of the powers with which it is so vested in the consummation of the purposes in view a contract relation arises, and the conditions imposed by the statute in behalf of the public become duties to be observed and performed in the exercise of the powers and the franchise conferred upon it. (*People* v. *Albany and V. R. R. Co.,* 24 N. Y., 261; *Abbott* v. *Johnstown, etc., R. R. Co.,* 80 id., 27.)

But powers given merely as such do not necessarily charge with imperative duty to exercise them. They furnish the means for the practical efficiency of the purposes of the franchise, and the conduct and operation of the business of the corporation, and the exercise of them are dependent upon the judgment and discretion of its managers. The question here has relation to the public and does not involve the consideration of those of a private character between the corporation, as a common carrier, and individuals damnified by failure to perform duties due to them as such.

It, therefore, seems to follow that the inquiry is whether, by force of the statute, a railroad company organized under the general laws of this State, relating to such corporations, is charged with the duty of providing a structure known as a depot building for the use and accommodation of passengers and freights at a station where it regularly stops its trains for the purpose of permitting the former to leave and take the cars and to discharge and receive property for transportation. This is not, in the terms of the statute, literally expressed as a requirement, and may not be embraced in a strict interpretation of its language. The purpose of the railroad, as defined by the

statute, is "for the public use in the conveyance of persons and property." And the company is required to "furnish sufficient accommodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting * * * at the usual stopping places established," etc., and " shall discharge such passengers and property," etc. The duties incident to those expressly imposed are such as may be reasonably necessary to accomplish the required purpose.

A railroad company establishes its stations for regular stoppage of trains for passengers and property at places remote from each other. Detention of persons for greater or less time there waiting to take trains, and for opportunity to leave there for their places of destination after the arrival of trains, is practically a reasonable necessity, and it is very evident that the accommodation of passengers fairly requires the maintenance of a suitable depot building at such a station. While it may be said that this is a matter of advantage to the company for the purposes of its business and in aid of its invitation for patronage, it is also a matter of public concern and a substantial benefit in that respect to have such provision made as distinguished from mere convenience, as well as the latter, and we think a reasonable interpretation may bring it within the necessary incidents of the duties required of a company, and embrace it in the " accommodations " for the transportation of passengers, in view of the purpose and manifest spirit of the statute. This view is aided by the fact that such accommodations were contemplated by the provision of the statute giving to a railroad company the power to erect and maintain buildings, stations, etc., for the use and accommodation of passengers and freight, and the right to acquire property for such purpose. (*In re N. Y. and H. R. R. Co.* v. *Kip,* 46 N. Y., 546.) The language of the provision of the statute in question is not entirely specific, and may, without violence to its terms, be treated as if it required the company to furnish sufficient accommodations for passengers and property in and about the business of transportation. A strict and literal interpretation of the words of a statute will not be adhered to when it can be seen that they do not fully express the apparent intent of the law-makers. The legislative intention is to be sought

for, and when the language is not so explicit as to prevent, its construction and effect may be aided by and ascertained from the cause or purpose of the statute; and with a view to that end the interpretation should be reasonable rather than technical, when its language fairly permits. (*Pillow* v. *Bushnell*, 5 Barb., 159; *People ex rel. Wood* v. *Lacombe*, 99 N. Y., 49.) In view of the purpose of this statute and the important rights which it furnishes by the grant of powers to corporations formed pursuant to it, the statute is entitled to a liberal construction in behalf of the public, so as to embrace within the duties charged the powers given, so far as the latter are essential to the substantial accommodation of the public, and may be embraced within the duties imposed or deemed necessarily incidental to their performance. These views place the maintenance of suitable depot buildings, at stations fairly requiring it, within the accommodations for the transportation of passengers required by the statute.

We find no cases arising in this or any other of the United States, and none such are cited by counsel bearing directly upon or necessarily having any application to the question here. *In re Caterham Railway Company* (1 C. B. [N. S.], 410) was a proceeding for a mandatory injunction founded upon a statute which provided that "every railway company * * * shall, according to their respective powers, afford all reasonable facilities for the receiving and forwarding and delivering of traffic upon and from the several railways * * * belonging to or worked by such companies, respectively, * * * so that all reasonable accommodation may, by means of the railways, * * * be at all times afforded to the public in that behalf." And in respect to one of the grounds of complaint that persons waiting for trains were exposed to the weather, the court granted a rule requiring the company to provide a covered station at the place there in question. All the judges there concurred in such result, and one of them remarked that this cause of complaint was "withholding a reasonable accommodation to which the public are entitled." (And see *South Eastern Ry. Co.* v. *Ry. Commissioners*, L. R., 6 Q. B. D., 586; reviewing S. C., 5 id., 217.)

The duty in question is not an absolute one but is dependent upon circumstances which render it both reasonable and necessary for the accommodation of the public, and the inquiry that leads to the

determination of that question is, in its nature, judicial or discretionary. The business at a station may be so small and inadequate to the expense required as to make the demand for the erection of a depot building unreasonable. (*People ex rel. Wheeler* v. *Long Island R. R. Co.*, 31 Hun, 125.) And ordinarily it may be assumed that the discretion of the company will be properly exercised, but when it appears that the facts and circumstances exist which require the performance of the duty, then it has passed beyond the domain of discretion and the duty is imperative. And when such is the judgment of the court it may direct the issuing of a *mandamus* to require it to be done. (*State* v. *N. H. and N. Co.*, 37 Conn., 153, and see cases before cited.)

It appears that a large amount of freight is annually received and shipped, and a large number of passengers arrive at and depart from the village of Hamburgh; that the structure at that place is inadequate for those passengers and freight, and that the inadequate accommodations furnished by the defendant are matters of serious damage to a large number of persons doing business with the defendant there. Assuming as we do that the statute is broad enough to embrace the subject of furnishing such structure within its direction, the court was justified upon these facts in its conclusion at Special Term, unless there are other considerations in the way of such relief. The defendant is a solvent corporation, and while it appears that it has necessarily expended a large amount of money in order to operate this leased road with safety to the public, it does not appear that the financial condition resulting from the expenditure and receipts as applied to that road is such as to require the conclusion that the expense necessary for the purpose in view would be an unreasonable requisition upon the defendant.

The Buffalo and Southwestern Railroad Company owns sufficient land not occupied otherwise than by the depot now at such station of sufficient dimensions for the construction of a suitable depot, and which is covered by the lease. While it may be seen that there would have been no impropriety, and that it may have been advisable to have united that company as a party defendant in this proceeding, in view of some of the provisions of the lease, it does not seem to us to have been necessary for the purposes of the remedy sought.

The view taken of the case requires the consideration of no other question presented, and leads to the conclusion that the order appealed from should be affirmed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Order affirmed.