HERMAN TIARKS Respondent, *vs.* ST. LOUIS & IRON MOUNTAIN R. R. Co., Appellant.

58 45
36a 153
58 45
99a 274

1. *Railroads—Fences—Killing of stock—Damages—Timber land.*—The 43rd sec. of the Railroad Corporation Law, (Wagn. Stat., 310–11) which requires all railroads " to erect and maintain fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed prairie lands ;" requires that in such places, fences shall be erected and maintained on both sides of the road. But the obligation is not extended to timber lands or land from which the timber has been cut, but which is not cultivated. And when stock is killed at such a place the owner is not entitled to double damages. He can only recover single damages, by proceeding under sec. 5 of the Damages Act. (Wagn. Stat., 520.)

*Appeal from Madison Circuit Court.*

*Dryden & Dryden,* for Appellant.

I. The case is one where the land at the place of injury was uninclosed and uncultivated timbered, not prairie land. To such a case the statute does not reach; and there was therefore no evidence to sustain the verdict, even for single damages. The 43rd section gives no right of recovery except where the injury happens within inclosed or cultivated fields or uninclosed prairie lands. The case proved còmes within neither the letter nor the spirit of the statute.

II. The verdict cannot be sustained under the 5th section of the Damage Act (1 Wagn. Stat., 520) because the verdict is a verdict for damages,whereas the only verdict which the law warrants is a verdict for the value of the thing injured.

III. If we are right in supposing the plaintiff failed to bring his case within the provisions of section 43, then the judgment for double damages was clearly erroneous, for there is no law other than that section which gives the right to double damages. The case of Hudson vs. The St. Louis, K. C. & N. Rw. Co., (53 Mo., 525,) has no application. No such question arose there as is made here. That was a case which confessedly came within the 43rd section; this most clearly does not.

*B. B. Cahoon,* for Defendant in Error.

I. The land was in the state of being cleared for cultivation at the point where the cow strayed upon the track and was killed. Under these circumstances the defendant in error was entitled to recover under the statute. (Wagn. Stat., 310–11, § 43.) In construing the statute we are to examine it in the light in which it was enacted, and take into consideration " the whole object which led to its enactment." (Lafferty vs. Han. & St. Joe. R. R. Co., 44 Mo., 294.) The object of the statute is two-fold : 1st—as a public regulation for the safety of passengers and the traveling public, who are exposed to danger and peril in case of collision with stock ; and 2nd— for the benefit and protection of owners of stock who are liable to suffer loss and damage, by reason of the stock getting upon the road and being injured or killed for want of a fence on the sides of the road, which would have prevented the stock from straying on the road. (Lafferty vs. Han. & St. Joe. R. R. Co., 44 Mo., 294 ; Gorman vs. Pac. R. R. Co., 26 Mo., 450.)

II. In this State the owners of cattle incur no responsibility, and are not guilty of any fault or negligence toward others, by turning loose their cattle, unless such cattle trespass upon fields inclosed in the manner prescribed by law. (Gorman vs. Pac. R. R. Co., 26 Mo., 445-6-8-9.) On the other hand, the statute requires corporations to have their fences built at least as soon as they commence running their railroads. (Comings vs. Han. & Cen. Mo. R. R. Co., 48 Mo., 516 ; Clark vs. Verm. & C. R. R. Co., 28 Verm., 103.)

III. This court, in a recent case, in construing the statute, declares that " the statute requiring railroads to be fenced, does not confine or limit the parts to be fenced to prairie or untimbered land," as is contended for by the plaintiff in error. (Hudson vs. St. L., K. C. & N. R. R. Co., 53 Mo., 539.)

IV. This second instruction was clearly erroneous. (53 Mo., 539). If it was not contemplated that the whole road should be fenced, damages for the value of cattle killed, would not be given, as is done by § 5, Wagn. Stat., 520. Moreover,

if the cow was not killed at any of the points on the road, required by Wagn. Stat., § 43, 310–11, to be fenced, but killed at some other point on the road, then the company would be liable for her value if the road was not fenced, irrespective of the question of negligence; (Wagn. Stat., 520, § 5, and see authorities cited in note 2; Bigelow vs. N. M. R. R. Co., 48 Mo., 520) and in this event the instruction was calculated to mislead the court sitting as a jury, and was properly refused. (Klamp vs. Rodewalt, 19 Mo., 449.) Its logic went to the assertion of the proposition, that if the court found the cow was killed, under the state of facts detailed in the first instruction, there could be no recovery at all; this was not the law.

WAGNER, Judge, delivered the opinion of the court.

This case was commenced before a justice of the peace, and was brought for damages for killing plaintiff's cow on defendant's railroad. In the justice's court plaintiff had a judgment, and on an appeal to the Circuit Court there was a trial without a jury and a verdict found for plaintiff for thirty dollars damages, and the court doubled the damages and gave judgment accordingly. The action was commenced under the 43rd section of the railroad corporation law, (1 Wagn. Stat., 310–11) and the only question is, whether under the circumstances of the case the action is maintainable under that section.

The evidence in the case is brief and undisputed; it shows that the cow was killed at a place where the railroad was not fenced. The land at the place was uninclosed and uncultivated and it was not prairie land. It was originally timbered land, but most of the timber had been cut off. There was no evidence, whatever, of any actual negligence or carelessness on the part of the company in running its train when the cow was killed, and this fact was so declared by the court.

The second and fourth instructions offered by the defendant, were refused, and that constitutes the error complained of and furnishes the theory on which the court based its deci-

sion. By the second instruction, the court was requested to declare the law to be : that there was no law that obliged the defendant to fence its railroad at points where the same run through, along, and adjoining timber land or land from which timber had been wholly or partially cut off, but which land had never been inclosed by a fence or cultivated. The fourth instruction was simply a declaration that land covered with timber, or which had once been timbered land, was not prairie within the meaning of the law.

The 43rd section of the railroad corporation law has frequently been before this court, but the point now raised has never been presented or adjudged. The section makes it obligatory upon all railroads in this State to erect and maintain good and substantial fences on the sides of the road where the same passes through, along, or adjoining inclosed or cultivated fields or uninclosed prairie land; and until such fences are erected, the corporation is made liable in double the amount for all damage that is done, by its agents, engines or cars, to all animals on the road.

In Walther vs. Pac. R. R. (55 Mo.. 271), it appeared that at the point where the horse was killed, the road adjoined inclosed and cultivated fields on one side, and rough, timbered, and uninclosed lands on the other side, and that the horse got upon the road from the uninclosed side. It was held that the company was liable, and that under a proper construction of the statute it was contemplated that the road should, in such a case, be fenced, not only on the side on which the inclosed field was situated, but on both sides. The statute requires that where the road passes through, along or adjoining inclosed or cultivated fields good and substantial fences shall be erected and maintained on the sides of the road. The same requirement is made where it runs through uninclosed prairie land, and it was obviously designed in these cases, that the road should be fenced on both sides so as to prevent the approach of stock. In the case of Slattery vs. The St. L., K. C. & N. Rlw., (*Id.*, 362,) the same principle was reiterated and it was decided that the company should

fence in the line of their road adjoining all inclosed lands whether timbered or otherwise.

That these cases justly interpret and faithfully carry out the spirit and intention of the law, I have no doubt. The duty of the road is to fence where it passes through, along or adjoining inclosed or cultivated fields. The statute does not merely say on the side of such inclosure or cultivated field, but on the side of the road. No distinction is made. Nor does it make any difference as to the character of the country whether timbered or not. The reason is plain enough. Wooded or timbered land is frequently inclosed for pasturage, and in that event there is both propriety and necessity in compelling the roads to fence, to prevent cattle or animals from getting on the track. But where there is no inclosure or cultivation, then the law confines the duty of fencing to uninclosed prairie lands. There is no mistaking the reason of this. We know that this State is composed largely of prairie lands. They have always been considered as very valuable for grazing. Instead of being under the necessity of keeping their animals inclosed, as is the case in some of the older States, our people have had the advantage of free pasture, and derived large profits from these prairies. The legislature, knowing this, saw that the same reason existed for the erection and maintenance of fences in the prairie country that existed where there were cultivated or inclosed fields, namely, to keep animals off the track, both to preserve them from being hurt, and to render traveling less hazardous. But the timbered land was never regarded as furnishing any inducements, or likely to be used for pasturing purposes, and therefore it was not included in the statutory requisition. But where the timber has been cut off, can the law be made to prevail? The meaning of what is included in the term "prairie land" is too well known and strongly marked, to admit of any such a construction. No one, I apprehend, would ever think of calling a field, which had been cleared of timber, prairie land. The legislative mind was never directed to this view of the subject. The reason, I suppose, why the law

was not made to apply to timber land which was cleared off, was that it was never anticipated in this State that any one would cut the timber off of his land and leave it open for purposes of grazing. The law clearly does not apply to the case, and we have no right to make a new law. The enactment is clear and devoid of any ambiguity and we would not be justified in torturing it into a meaning that was never intended for it. Unless the killing takes place where the statute makes it obligatory on the roads to fence, there can be no double damages.

The 5th section of the Damage Act (1 Wagn. Stat., 520) was designed to furnish an inducement for the roads to fence their track where it was not deemed absolutely necessary to compel them to do so. By that section, if the road is not fenced, and animals are killed at a place where the law does not require fences to be erected, the law raises the inference of negligence, and the corporation will be liable. The owner has only to prove the killing, and the law presumes carelessness; but the liability only extends to the value of the stock killed. We think the plaintiff mistook his remedy. He should have commenced his action under this last section, where the proofs would have entitled him to the value of his cow, but as she was killed at a place where the road was not required to be fenced, he cannot obtain double damages under the 43rd section.

Wherefore the judgment should be reversed and the cause remanded. The other judges concur.