ANDERSON, Respondent, vs. STEWART and another, Trustees, Appellants.

*January 30 — February 25, 1890.*

*Railroads: Fences: "Depot grounds."*

In an action for the killing of horses upon a railroad track the evidence showed, among other things, that they came upon the track at a point where a town plat had recently been laid out; that a sidetrack and platform had been maintained there for a long time, but there were no depot buildings and no agent or employee of the company; that no tickets were sold or freight billed to or from the place, and that trains stopped only when flagged; that there were but two houses and a store on the plat, and that since it was laid out nothing had been done towards making depot grounds except to remove the fences for about 400 feet along the track and to put in cattle-guards. *Held*, that the trial court was warranted in holding that the place was not "depot grounds" within the meaning of sec. 1810, R. S.

APPEAL from the Circuit Court for *Ashland* County.

Action against the trustees in possession of and operating the Wisconsin Central Railroad, to recover the value of

horses killed upon the track. The facts will sufficiently appear from the opinion. The defendants appeal from a judgment in favor of the plaintiff.

For the appellants there was a brief by *D. S. Wegg* and *Howard Morris*, and oral argument by *Mr. Wegg*.

For the respondent there was a brief by *Miles & Shea*, and oral argument by *I. C. Sloan*.

ORTON, J. The horses of the plaintiff came on the track of the Wisconsin Central Railroad, at the village plat of Peeksville, between Glidden station on the north and Butternut station on the south, and were killed by a passing train. The only litigated question in the case was whether the place where they were killed was "depot grounds," so that it need not be fenced. The court directed a verdict for the plaintiff, holding that such place was not depot grounds, and that it ought to have been fenced. We think the court was warranted by the evidence in so holding and could not have reasonably held otherwise.

The plat was laid out, and the fences removed from a space along the railroad of about 400 feet, and cattle-guards placed at each end, only about a month before the accident. The road along there runs about north and south. There is a highway parallel with the track on the west side, and another highway crossing the track east and west, and a rather blind wagon road or path from the first-mentioned highway, across the track, and running northeasterly to a country store, at some distance from the road. The horses came from the west, and were killed on this wagon road. There were only two other houses on the plat, besides the store. The evidence does not show that anything was done by the company, besides removing the fences, to make this point depot grounds, after the plat was laid out, or that there had been any new conditions of business or travel since that time. When the fences were there, there were gate-

ways by which freight was brought to the track. There was a sidetrack and a platform at the main track, from which passengers could get on the cars. Freight was left anywhere along the main track, and taken care of by the owner until a train could be stopped by flagging, and take it aboard. Freight to be left there was thrown off by the side of the track, and left there without care until the owner took it away. Freight for this point had to be billed to the next station north or south, and passengers for this point had to procure their tickets at or for those stations. There was no agent, clerk, or employee of the company there for any purpose; and everyone wishing a train to stop did his own flagging. There was a post office and postmaster at the store at one time, but after about a month they were both removed. The mail train used to stop there regularly when the post office was there. There was considerable freight delivered there formerly and especially the winter before the accident, but there has been but little since. The store had their goods shipped there, but have had but few lately. Sometimes the trains could not be induced to stop, and freight would remain several days before it could be sent away. The travel, principally, was of miners going to their works back into the country. Freight was taken away, and delivered or thrown off, and travelers taken or left precisely the same way at any point outside of stations between there and Ashland as at this point, by flagging the trains. If they were depot grounds after the plat was laid out and the fences removed, they had been so for a long time before. If there has been any change, there is less freight and travel, and less business done there, since the fences were removed. The side or spur track cuts but little figure in making a depot there, for one witness testified: "I know they put off freight at places more convenient than this. It was not very convenient to the sidetrack."

Another witness testified: "When we had freight to ship, we took it anywhere on the track, and be there with it, and would flag the trains. Freight coming to that point was dropped off by the side of the track, and we went and got it. They didn't pay any attention to it. There was nobody there to look after it. We could not buy a ticket there." Another witness testified: "The Central has been delivering freight at any point on the road in the same way that it was delivered at Peeksville. I was deputy postmaster at Peeksville a short time. There was no post office there when these horses were killed. They run only one month. Mrs. Weigley was postmistress only a month." The same witness testified that he had freight remain there a week, and they would not stop there long enough to take it on, and he had to haul freight from there to Glidden station to get it taken.

But I will not copy the testimony further, as it would be mere repetition. The testimony sustains the above facts. There is not the slightest evidence that this village plat was depot grounds when the horses were killed, and there were none of the concomitants of a railway station, except the platform and side track, and they were there long before the ground was platted or the fences removed. There has been nothing done by the company to make it a depot, since the ground was laid out into lots, except to remove the fences and put in the cattle-guards. There is no ground or excuse for even a pretense that this was a depot. It is difficult, if not impossible, to find an analogous case in the books. The recent case, in this court, of *Jaeger v. C., M. & St. P. R. Co.* 75 Wis. 130, is nearer so than any I have seen. There, however, the side track was used to ship large quantities of tan bark. The case of *Dinwoodie v. C., M. & St. P. R. Co.* 70 Wis. 160, is a very much stronger case, and *McDonough v. M. & N. R. Co.* 73 Wis. 223, is much

Anderson vs. Stewart and another.

like it in many respects, but there charcoal was received and shipped. A mere flag station is not a depot. *Hurt v. St. P., M. & M. R. Co.* 39 Minn. 485.

The company cannot, of course, claim that there was a depot there while it remained fenced, and nothing was done afterwards to make it so. This place had been used for a long time in the same way, and the company had not seen fit to put up any depot building, keep an agent, sell tickets, and bill freight, or manifest any intention to increase the facilities of their own business, or that of others, in the near future, or assumed any of the obligations of having a depot at that place. It might occur, possibly, that a depot had just been opened in a new village that had the prospect of immediate growth. The people had begun to build dwelling and business houses, and to establish themselves in business, and others were locating there, and it had prospects of growth. A depot is needed at once. The fences along the railroad through it would be a great inconvenience, and retard its growth. They must be removed. The company must have time in which to establish all the facilities of a depot. The village is in embryo, and so is its depot. In such a case, if the company manifested an intention to go on as fast as practicable, and complete the facilities of a depot appropriate to the place, it might be that they would be justified in removing the fences, among their other beginnings and preparations. But this is a great way from such a case. The circuit court did not err in directing a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.