ELWOOD E. HURD, Respondent, v. CHAS. H. CHAPPELL et al., Receivers, etc., Appellants.

**Kansas City Court of Appeals, January 6, 1902.**

1. **Railroad: KILLING STOCK: CATTLE GUARDS: SWITCHES.**
   A railroad is not required to maintain cattle guards so near its switches as to endanger the lives of its employees or to interfere with the handling of its trains.

2. ———: ———: ENTRY ON TRACK. There can be no liability under the double-damage act for killing stock unless they enter on the track at a place which is required by law to be fenced.

3. ———: ———: FENCING: PLATTED GROUND. A railroad is not required to fence its tracks where they cross the plat of a city.

4. ———: ———: EVIDENCE. The record is reviewed and found not to disclose facts sufficient to send to the jury the question of whether defendant was liable under the double-damage act.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander,* Judge.

REVERSED.

*Hamilton & Dudley* and *J. G. Trimble* for appellants.

(1)    It was shown without contradiction that the animal came upon the railroad within the limits of the town, and also that at the points where her tracks were first observed upon the railroad and where she was injured the road was fenced on both sides.    Swearingen v. Railroad, 64 Mo. 73; Vanderworker v. Railroad, 51 Mo. App. 166; Crenshaw v. Railroad, 54 Mo. App. 233; Wright v. Railroad, 56 Mo. App. 367.    (2)    Where a town is laid out with streets dedicated to the public crossing the railroad, defendant is not bound to fence.    Gerren v. Railroad, 60 Mo. 405; Edwards v. Railroad, 66 Mo. 567; Elliott v. Railroad, 66 Mo. 683. (3)    The defendant is not required to maintain cattle guards so near the apex of a switch as to endanger lives of employees. Grant v. Railroad, 56 Mo. App. 65; Pearson v. Railroad, 33 Mo. App. 543; Jennings v. Railroad, 37 Mo. App. 651; Webster v. Railroad, 57 Mo. App. 451.    (4)    It is the place where the animal got on the track and not where it was killed which fixes liability.    Ehret v. Railroad, 20 Mo. App. 251. A company is not liable under section 1105 unless stock got upon the track at a place where it was required by law to fence, regardless of where the stock may have been killed. Moore v. Railroad, 81 Mo. 499; Brassfield v. Patton, 32 Mo. App. 572; Nance v. Railroad, 79 Mo. 196; Seibert v. Railroad, 72 Mo. 565.    If suit be under section 1105, there can be no recovery under section 1106 nor at common law. Luckie v. Railroad, 67 Mo. 245; Rhea v. Railroad, 84 Mo. 345; Grant v. Railroad, 56 Mo. App. 65.    (5)    The animal came upon the track within the station grounds, where the defendants are not required to fence.    Lloyd v. Railroad, 49 Mo. 199; Morris v. Railroad, 58 Mo. 78.

*Harry K. Allen* for respondent.

(1)    The failure to fence at the point where the animal came on railroad determines liability.    Fraysher

v. Railroad, 66 Mo. App. 573.     Ehret v. Railroad, 20 Mo. App. 251.     It was for the jury to determine where the animal did enter on the road.     Foster v. Railroad, 44 Mo. App. 14.     (2)   It was the duty of defendant to erect and maintain lawful fences on the side of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed land.     There is no distinction made between the uninclosed land of defendant and that of a third party.     Sec. 1105, R. S. 1899; Dean v. Railroad, 54 Mo. App. 647; Emmerson v. Railroad, 35 Mo. App. 622; Duke v. Railroad, 39 Mo. App. 107.     The obligation to fence is for the benefit of the general public and not for adjoining owners only.     Jackson v. Railroad, 43 Mo. App. 324. (3)   It is conceded that the distance from the depot to the point where the mare entered on the road was two thousand and ninety-seven feet.     Whether or not it was necessary, in order to avoid danger to its employees and for the purpose of safe and convenient transaction of business with the public, to leave unfenced its road, near a depot in a town for such a distance, is purely a question of fact for the jury.     Brandenburg v. Railroad, 44 Mo. App. 224; Bean v. Railroad, 54 Mo. App. 642; Morris v. Railroad, 58 Mo. 82.     This question was submitted to the jury on appropriate instruction and their finding was against defendants.     (4)   It is conceded in this case that between the depot and the point at which the animal entered upon the road there was no highway or public crossing —hence, it was the duty of defendant to fence its road at that point.     Wright v. Railroad, 56 Mo. App. 367; Chouteau v. Railroad, 28 Mo. App. 556; Russell v. Railroad, 26 Mo. App. 368; Cox v. Railroad, 128 Mo. 363.

SMITH, P. J.—This is an action which was brought before a justice of the peace to recover damages under section 1105, Revised Statutes 1899, for the loss of a mare.     There

was a trial in the circuit court resulting in judgment for the plaintiff and from which defendant appealed.

The defendant at the trial, both at the close of the plaintiff's evidence and at the close of all the evidence, interposed a demurrer thereto, which was by the court overruled; and the action of the court in this regard is assigned as error here. The propriety of the action of the court thus called in question must be determined by reference to the evidence presented by the record before us.

It appears therefrom that the defendants operate the K. C. & N. C. railroad, which extends from Kansas City to Pattonsburg, Missouri; that the plaintiff owned a mare which he found on defendant's right of way with one of her forelegs broken and with other injuries rendering her utterly worthless for any purpose. The place where the mare was found was over a half mile south of the Pattonsburg depot and just north of a trestle. Eighty rods distant north of this trestle was the southern apex of a Y on which the defendant handled its cars and trains of cars at Pattonsburg. Reference to the accompanying plats offered in evidence and marked "A" and "I" will be found useful in arriving at a correct idea of the *locus in quo*.

The defendant's depot is thus seen to be at the northeast apex of the Y or triangle and within the limits of the city of Pattonsburg. The evidence discloses further that at the time the plaintiff's mare was injured the defendant had a lawful fence on the south side of its road extending from Elm street in said city south beyond the trestle where the plaintiff's mare was found; that there was a like fence extending from south of the trestle along the west side of defendant's road to the southern apex of the Y and from thence on the west side of the Y to its western apex where it was joined to the Wabash railway tracks; that on the north side of the Y extending from its western apex to the depot is also a like fence to the point where it entered the limits of the city as shown by the plat "A." It further appears from the last-named plat that there

EXHIBIT A.

EXHIBIT I.

is a road or street on the western boundary of said city of Pattonsburg which extends south across the several tracks on the north side of the Y and upon the irregular triangle-shaped piece of ground embraced in the Y on which are the defendant's cattle pens. There were no cattle guards between the apex of the Y and the trestle where the plaintiff's mare was found.

The plaintiff's mare escaped from a point in the city more than a block north of the defendant's depot. There is no evidence showing by what route she came to where she entered upon defendant's track at the southern apex of the Y. She might have crossed the several tracks on the north side of the Y by going along one of the intersecting streets and then continuing along the same until she entered upon the right of way of the defendant's Kansas City line or upon the triangular piece of land within the Y; or she might have taken the road on the western boundary of the said city and traveled south thereon until she had passed over the defendant's tracks forming the north side of the Y and reached the defendant's cattle pens, and in that way entered upon the triangle; or, she might have entered on the right of way of defendant's Kansas City line at other places in the territorial limits of said city where the defendant was not required to fence its road.

While it does not appear at what point the plaintiff's mare entered upon the triangle, or, indeed, that she entered thereon at all, yet if she did so enter it is clear that she entered by crossing the defendant's tracks at a point where it was not required to fence. The record nowhere discloses the slightest evidence that the plaintiff's mare entered upon the triangle at a point where the defendant was required to maintain a fence. It can no more be inferred that the mare entered upon the triangle and passed over the same to the point near the southern apex where her tracks were found than that after she entered upon the tracks or right of way

she continued thereon until she reached the place where she was found.

The defendant was not required to maintain cattle guards so near to the approaches of its switches as to endanger the lives of its employees or as to interfere with the business of handling its cars or trains of cars. Grant v. Railway, 56 Mo. App. 65; Pearson v. Railway, 33 Mo. App. 543; Jennings v. Railway, 37 Mo. App. 651; Webster v. Railway, 57 Mo. App. 451; Lloyd v. Railway, 49 Mo. 199; Swearingen v. Railway, 64 Mo. 73. There was, as has been already stated, no cattle guards at the southern apex of the Y near where the tracks of plaintiff's mare show she entered upon the track of defendant's railway, but the defendant was not required to maintain such cattle guards at that point. It is quite obvious from all the evidence that cattle guards at that point would not only have materially interfered with the business of defendant but would have endangered the lives of its employees.

It is a matter of common knowledge, and of which courts are not ignorant, that western railroads, with the great engines now in use by them, are able to pull and do pull over their roads trains having in them forty or fifty cars, and sometimes a greater number, the length of each car being thirty feet and upwards. Such trains would extend from the southern apex of the Y trestle to where the plaintiff's mare was found. The undisputed evidence shows that cattle guards could not have been maintained at the apex of the Y or, indeed, north of the trestle, without interfering with the defendant's business or endangering the lives of its employees engaged in running its trains.

It is the well-settled law of this State that it is the place where an animal gets on the track of a railway and not where it is killed that fixes the liability under the statute. There can be no liability under the statute (section 1105, Revised Statutes 1899) unless the animal gets upon the railway track at a place where the railway is required by law to fence re-

gardless of where such animal may be killed: Ehret v. Railway, 20 Mo. App. 251; Brassfield v. Patton, 32 Mo. App. 572; Nance v. Railway, 79 Mo. 196; Moore v. Railway, 81 Mo. 499.

There can be no doubt that the plaintiff's mare entered upon the defendant's railroad within the limits of said city of Pattonsburg, or, if she entered upon such railroad without the limits of said city, it was at a point where the defendant was neither required to fence nor to maintain cattle guards with wings thereto, and, therefore, there can be no liability under the double-liability statute for the injury to plaintiff's mare. The defendant was not required to fence its several tracks east of the corporate line of said city and where the same crosses the plat thereof. Boyd v. Jones, 49 Mo. 202; Edwards v. Railway, 66 Mo. 569; Wymore v. Railway, 79 Mo. 247.

It is thus seen that in no view of the case was the defendant required to fence a large part of the triangle, and if the plaintiff's mare after crossing said tracks went upon that part of the triangle and from thence back upon the right of way, and was subsequently injured by a passing train, that there was no liability under the double-liability section. If the mare entered upon the triangle at all, of which, as has already been said, there was no evidence whatever, the probability is that she went upon that part which the defendant was not obligated by law to fence. Looking at all the facts and circumstances disclosed by the evidence, and we see nothing to justify the conclusion that the mare entered upon the part of the triangle west of the corporate line of said city, or that she passed from there upon the right of way at its southern apex. The evidence tends to show no state of facts from which the inference may be deduced that the mare entered upon the right of way at the apex from the triangle.

If it be conceded that the defendant was required to fence the triangle at its southern apex the plaintiff has shown by no

evidence that the mare entered upon the right of way at that point; and, therefore, we are not called upon to determine the question as to whether or not the defendant was obligated to fence any part of said triangle. The facts which it was necessary for the plaintiff to prove in order to make out a case under the double-damage section of the statute are not disclosed by the evidence contained in the record. Outside of conjecture there was no case—nothing to warrant a submission to the jury. Webster v. Railway, supra; Jennings v. Railway, supra; Pearson v. Railway, supra.

It results that the judgment must be reversed. All concur.