ACORD, Respondent, v. ST. LOUIS SOUTHWEST-ERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 16, 1905.

1. RAILROAD: Fencing Track. A railroad company, under the statute, has a right to leave unfenced so much of its track where it maintains switches at depots and stations as is reasonably necessary to avoid endangering its employees in performing their necessary duties.

2. ——: ——. In an action for damages on account of an animal killed near a station, where there was no evidence to show it would endanger the employees to fence and maintain cattle guards so as to inclose the place where the animal was killed, it was a question for the jury as to whether a fence at that point was necessary to protect such employees.

3. ——: ——: Double Damage Act. Cases under section 1105, Revised Statutes of 1899, the double damage section, against railroads for killing stock, can arise only in case such animals were killed at points where the road is required by said statute to be fenced.

4. ——: ——: Single Damage Act. Cases under section 2867, Revised Statutes 1899, the single damage act, arises only where the animals were killed at a place not *required* to be fenced but where the track *may* be fenced, under the construction of the statute, and when such fence would not interfere with the transaction of business or the safety of the train operatives.

5. ——: ——: Common Law Cases. A case arises at common law for damaging or killing stock at a point on the railroad which the company is not required nor permitted to fence, where the killing or damage results from the negligent acts of the railroad company's employees.

6. ——: ——: **Single Damage Act: Presumption of Negligence.** Under section 2867, the single damage act, where stock is killed or injured by a locomotive or cars at a point on the railroad where it is not required by law to be fenced, but where it might be fenced, recovery may be had without proof of negligence on the part of the railroad employees; a prima facie case is made out by showing the ownership and the killing of the animal on the railroad, by the train or locomotive, at a point which was not required to be fenced, but which might have been fenced without inconvenience to the public or danger to the employees, and was left unfenced.

7. ——: ——: **Where Fence is Required: Incorporated Towns.** Railroad companies are not *required* to fence within the limits of incorporated towns and are not *permitted* to fence such portions thereof as will obstruct streets and alleys.

8. ——: ——: ——: **Unincorporated Towns.** A railroad company is not *required* to fence their tracks within the limits of platted towns, whether incorporated or not, the streets of which are dedicated to public use. They are not *permitted* to fence such portions of the road therein as would obstruct such dedicated streets and alleys.

9. ——: ——: ——: **Public Crossings.** Railroad companies are not *required* nor *permitted* to fence public crossings or statutory private roads which are free to the public.

10. ——: ——: ——: **Depots and Stations.** Railroad companies are not *required* to fence their track at depots or stations, where it is necessary to leave the track open for the transaction of business with the public and the reception and discharge of freight and passengers and they are not *permitted* to fence so near to depots or stations as to obstruct public streets.

11. ——: ——: ——: ——. Railroad companies are not *required* to fence so near to depots and stations, where they have switches, which by law are permitted to remain unfenced, that their fences and cattle guards would be in such position as to endanger the employees in working about the switches.

12. ——: ——: **Killing Stock.** In an action against a railroad company for killing stock on a track, at the point at which the animal entered upon the right of way determines the liability or non-liability and not the place where the stock is killed; but in the absence of evidence to the contrary, the law presumes the animal came upon the railroad where it was killed.

13. ——: ——: **Station.** A point on a railroad where a siding was maintained, where trains were stopped on signal to

receive and discharge passengers, where freight was shipped in and out, where a gravel pile was kept for a platform, was a station.

14. ——: ——: ——: **Killing Stock: Jury Question.** Where stock is killed near but not immediately adjacent to a station, whether the place where it is killed is necessary station ground, or whether it *might* be fenced so as to make the company liable, is a question of fact for the jury.

Appeal from Stoddard Circuit Court.—*Hon. Jas. L. Fort,* Judge.

Affirmed.

*S. H. West* and *W. H. Miller* for appellant.

(1) It being conceded by plaintiff that his stock was killed in the switch limits of Day (Avert) Station, it goes without saying that defendant was not required to fence its right of way at that point. Hillemann v. Railroad, 99 Mo. App. 271, 73 S. W. 220; Morris v. Railroad, 58 Mo. 78; Johnson v. Railroad, 27 Mo. App. 379; Russell v. Railroad, 26 Mo. App. 368; Lloyd v. Railroad, 49 Mo. 199. (2) Whether or not the company could have fenced its right of way, having due regard to the convenient transaction of its business and the safety of its, employees, is ordinarily a question of fact, but when there is no dispute as to the facts it becomes a question of law. O'Malley v. Railroad, 113 Mo. 319, 20 S. W. 1079; Bulond v. Railroad, 36 Mo. 484.

*H. S. Green* for respondent.

### STATEMENT.

This suit is for stock killed by the defendant railroad within the switch limits at Avert in Stoddard county. The petition is in five counts; the first count declared on the killing of a cow valued at $40; the second, on the killing of a three-year-old heifer valued at $24; the third on the killing of a cow valued at $35;

the fourth on the killing of a hog valued at $8; the fifth, on the killing of a hog valued at $8. The petition is in the usual form. The several animals were killed on different days, therefore separate causes of action are stated in each count of the petition.

The action is bottomed on section 2867, R. S. 1899. The negligence alleged is that at the point where the animals were killed, the defendant might have fenced its railroad tracks but that it negligently failed to do so. The case was tried by a jury. At the conclusion of the evidence on behalf of plaintiff, the defendant requested a peremptory instruction, separately on each count, to the effect that under the pleadings and the evidence, plaintiff could not recover. These instructions the court refused and defendant excepted. Defendant stood upon its request for the peremptory instructions and introduced no evidence. The case was submitted to the jury without instructions by the court, none having been asked other than the peremptory instructions requested by defendant which were refused. The jury returned a verdict on the several counts separately, in all amounting to $110, for which amount judgment was entered. After unsuccessful motions for a new trial and in arrest, the case is brought here by appeal.

The evidence discloses the following facts. Plaintiff was the owner of the stock and the several animals were killed by the engines and cars of defendant on its track. The total value was as found by the jury. The town of Avert, where the killing occurred, consisted of two small stores and a small sawmill of a capacity of two thousand or two thousand five hundred feet of lumber per day. Seven or eight families have residences there. The town is not incorporated; it is not a platted town; there are no streets or crossings; there is no public road crossing the railroad at this point; there is no depot. The railroad maintains a small pile of gravel, however, at which trains do not stop regularly, but some trains stop when flagged and take on and discharge passen-

gers. There is no station or ticket agent; no telegraph office or operator. Small quantities of freight are unloaded there at the platform, or rather, gravel pile, mentioned, and people carry it away in their arms or by wheelbarrows. The railroad maintains one side track at this point about one-half of a mile long, which is principally used by the sawmill. There are at times from ten to fifteen cars, loaded and unloaded, standing thereon. Trucks are run from the mill to the side track on which the lumber is hauled to the cars, also ten or fifteen teams had been employed hauling and loading handle timber at this switch track and a stave firm located at Malden had some staves and elm blocks loaded and shipped from there. All of that portion of the railroad between the switches where the side track was maintained and some more at either end of the siding and above the switches was unfenced. The cattle-guard was between one hundred and one hundred and fifty yards from the switch-head. It is difficult to determine from the evidence just where the various animals were killed with reference to the gravel pile at which trains stopped or with reference to the crossing, which crossing was not a public or private road crossing within the legal meaning of the term but was a place on the track used for that purpose. This much can be gleaned from the record; that the heifer, valued at $20 or $25 was killed about sixty or seventy yards outside the switches between the switch-head and the cattle guard; the two cows and the two hogs were killed at some point within the limits used for switches. A witness said one hog was killed some distance south from the crossing and one killed one hundred and fifty yards north from the crossing. Just where the two cows were killed it is impossible to determine from the record, except that it was within the switch limits. Witness Robinson said: "But where the stock was killed was not near the mill," therefore it could be fenced so far as the mill was concerned; so we take it that the heifer was killed sixty or seventy yards outside the switch lim-

its at a place which might have been fenced, and the two cows and the two hogs were killed at some place within the half mile occupied by the side track; the hogs not near the crossing or gravel pile, and none of the stock killed so near the mill but that the ground there could have been fenced without inconvenience to the mill interests. All of the witnesses swore that the grounds where the stock was killed might have been fenced without danger to the employees but some of them admit on cross-examination that to fence the entire open space would be inconvenient to the mill men and to those desiring ingress and egress to the gravel pile where the train stopped on being flagged. Defendant argues that the stock was killed at a point where it is not required to fence its tracks, insisting that the grounds there are depot or station grounds and necessary switch limits in connection with its station at Avert and that this court should so declare as a matter of law.

NORTONI, J. (after stating the facts).—Appellant's first point in his brief and in fact the point in the case, is: "It being conceded by plaintiff his stock was killed within the switch limits at Day (Avert) station, it goes without saying that defendant was not required to fence its right of way at that point." The evidence shows that the road was unfenced not only within the limits of the switch but as much as one hundred or one hundred and fifty yards beyond the head or apex of the switch and the heifer was killed on this unfenced track sixty or seventy yards from the switch-head. We think it would be going too far for the court to hold as a matter of law, in the absence of evidence showing the necessity of leaving so much space unfenced, that the railroad could leave open one-half mile of switch limits at a place like Avert and that as much as sixty or seventy yards should be left open by it between its switch-head and cattle-guard. There is no doubt that where the railroad has a right to and does maintain switches at a de-

pot or station, it has the right to leave open and un-fenced such ground traversed by the switches and so much also between the apex of the switch and the near-by cattle-guard as is reasonably necessary in order to avoid endangering the lives and limbs of its employes in performing their necessary duties in working about the switch. [Pearson v. Ry., 33 Mo. App. 543.] But it seems almost unreasonable to leave sixty to seventy yards for this purpose. The evidence is that one hun-dred or one hundred and fifty yards were open and un-fenced at this point but as the heifer was killed sixty or seventy yards from the switch-head, we are concerned with this much and no more. This would be one hun-dred and eighty or two hundred and ten feet. There is no evidence tending to show that it would endanger the lives or limbs of trainmen to place the cattle-guard near the switch-head; in the absence to that effect it seems that it is more than reasonably necessary for the pur-poses and we very promptly overrule the assignment in so far as the killing of the heifer is concerned and say that it was for the jury. [Welsh v. Ry., 55 Mo. App. 599.] It will be necessary, however, to give the matter of the killing of the other stock closer attention.

So much of our statute (sec. 1105, R. S. 1899) as is pertinent here, is as follows:

"Every railroad corporation running or operating any railroad in this State shall erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or culti-vated fields or uninclosed lands . . . and also to con-struct and maintain cattle-guards where fences are re-quired, sufficient to prevent horses, cattle, mules or other animals from getting on the railroad."

The language employed in this section to the effect that fences are required where the road passes along inclosed fields or uninclosed lands is indicative of the purpose of the Legislature to require roads to be fenced along such portions thereof as pass through out-of-town

or rural districts and for this reason our Supreme Court, in construing it, has long since established the rule that no fences are required thereby within the limits of incorporated towns and cities. [Edwards v. Ry., 66 Mo. 567; Loyd v. Ry., 49 Mo. 199; Weir v. Ry., 48 Mo. 558; Iba v. Ry., 45 Mo. 469; Meyer v. Ry., 35 Mo. 352; Smith v. Ry., 111 Mo. App. 410, 85 S. W. 972.] In Ellis v. Ry., 48 Mo. 231, the reason of the rule was given to be that ordinarily a railroad could not pass through a platted town or city without crossing the streets, and again, that such streets were highways within the meaning of the law and that to require railroads to fence inside such towns would require them to obstruct the streets and thus commit a public nuisance, therefore it was held that when stock was killed inside an incorporated town or city at a point where it was not platted and the streets were not dedicated, there was no reason for excusing them from fencing such portions as were not platted and where streets were not laid out. But in the latter case of Edwards v. Ry., 66 Mo. 567, which was approved in Wymore v. Ry., 79 Mo. 247, also in Rhea v. Ry., 84 Mo. 345, the Supreme Court repudiated so much of the doctrine announced in the Ellis case, supra, as required fencing inside the corporate limits when there was no platted streets, and held, upon the authority of the case of Loyd v. Ry., 49 Mo. 199, that the true reason of the rule exempting railroads from fencing their lines inside of incorporated towns and cities was that the statute only required them to fence along or adjoining inclosed or cultivated fields or uninclosed prairie lands and this requirement of the statute could have no application to incorporated towns or cities as they were neither "cultivated fields or uninclosed prairie lands" mentioned in the statute, and cited as bearing out this reasoning, the case of Tiarks v. Ry., 58 Mo. 45, where the court held that under this double damage statute, there could be no recovery for stock killed at an unfenced point on the road where the road passes through inclosed or unculti-

vated timber lands for the reason, as Judge WAGNER
said: "The law clearly does not apply to the case and
we have no right to make a new law." But the statute
has been changed since those cases have been decided and
the word "prairie" modifying the word "land" has been
stricken out. The word "prairie" defeated a recovery in
the Tiarks case, supra, because the stock was killed, not
at a point adjoining inclosed or cultivated fields nor ad-
jacent prairie lands, the killing having taken place ad-
jacent to uninclosed timber lands. (See also Walton v.
Ry., 67 Mo. 56.) The statute as it now reads, requires
fences at all points outside a town or at public or private
crossings and depot or station grounds. [Smith v.
Ry., 111 Mo. App. 410, 85 S. W. 972.] In Boyle v. Ry., 21
Mo. App. 424, the court said: "As the law now stands,
railroad companies, in short, are required under penal-
ty, to inclose their roads with lawful fences at all points
outside incorporated towns, except at public road cross-
ings and about their railroad stations, etc." This state-
ment of the rule is slightly inaccurate as the court there
uses the word "incorporated" towns when it should have
said "incorporated or platted" towns, where streets are
dedicated to the public use, and added statutory pri-
vate road crossings. In Gerren v. Ry., 60 Mo. 405, the
Supreme Court, in placing a construction upon the ad-
judicated cases on the subject, said: "Whenever the
land is regularly laid out into lots, blocks or streets, the
streets crossing the railroad, which streets have been
dedicated to public use as public highways, it would be
unlawful for the railroad company to fence up the streets
in such a town, and it would make no difference in such
case whether the town so laid out into streets, etc., was
incorporated or not." This case is quoted and followed
by the Kansas City Court of Appeals in the case of Van-
derworker v. Ry., 48 Mo. App. 654. These cases deal
with the section known as the double damage section,
which section now requires railroads to fence at all
points where the road passes "through, along or adjoin-

ing inclosed or cultivated fields or uninclosed lands," which terms have, by construction, attained the settled meaning of having application only to such territory as is outside of the towns, or in other words, rural districts. And it was held in Rhea v. Ry., 84 Mo. 345, that a recovery could not be had under this statute for stock killed inside the corporate limits of a town at a point which is not platted and laid out into blocks and streets, for the simple reason that the statute does not require fencing inside the corporate limits. The same was held in Edwards v. Ry., 66 Mo. 567. It was recognized however, that if the place where the stock were killed was a place which might have been fenced without inconvenience to the operation of the road or the public access thereto, in the necessary transaction of business therewith, a recovery for single damages might be had under the other section, on the ground that the company might have fenced and failed to do so. The case of Ellis v. Ry., 48 Mo. 231, and Brandenburgh v. Ry., 44 Mo. App. 224, confuse the law on the subject somewhat by assigning as the reason for exempting railroads from fencing inside incorporated towns, that it would be impracticable for the railroad to fence through a town as it would necessarily obstruct streets thereby. There is no doubt but the assumption is correct. Such fences would obstruct streets and crossings, but that is not the reason on which the rule of exemption is predicted. The true reason is that the statute does not require fencing inside such towns and the adjudicated cases recognize this as the true and only reason therefor and this reason must be kept constantly in mind if we are to understand the adjudicated cases arising under the two different statutes; one the double and one the single damage act.

It is well settled that railroads are not required, because the statute by its phraseology excludes, and they are not permitted to fence inside incorporated towns where streets and alleys cross the road or inside of towns

not incorporated, which are platted and streets dedicated to public use cross the road, because to fence at such places would obstruct public streets and work a nuisance. This exemption from fencing is in favor of the public which use and occupy the streets. [Russell v. Ry., 83 Mo. 510; Smith v. Ry., 111 Mo. App. 410, 85 S. W. 972.] It is also well settled that the roads are not required to fence at their depots or stations, such portion of the road as is necessary to remain open for the transaction of business with the public and the reception and discharge of freight and passengers. [Loyd v. Ry., 49 Mo. 199; Morris v. Ry., 58 Mo. 78; Russell v. Ry., 83 Mo. 510; Bean v. Ry., 20 Mo. App. 641; Robinson v. Ry., 21 Mo. App. 141; Russell v. Ry., 26 Mo. App. 368; Johnson v. Ry., 27 Mo. App. 279; Pearson v. Ry., 33 Mo. App. 543; Swearingen v. Ry., 64 Mo. 73; Hillman v. Ry., 99 Mo. App. 271, 73 S. W. 220; 3 Elliott on Railroads, sec. 1194.] This rule established first in the Loyd and Morris cases, supra, is seemingly emphasized and reaffirmed by the Supreme Court in Schaffer v. Ry., 144 Mo. 170, 45 S. W. 1075.

Another reason upon which the cases base the exemption of railroads to fence certain portions of the track near the station or depot, is that as fences and cattle-guards necessarily imperil the lives and limbs of those operating trains, and as the railroads are required to furnish a reasonably safe place for their employees to work, they are excused from fencing about their depot and station grounds and switches or so near thereto as will imperil the lives and persons of their employees. This exemption is in favor of the company and the employees. [Pearsons v. Ry., 33 Mo. App. 543; Welsh v. Ry., 55 Mo. App. 599; Ellis v. Ry., 89 Mo. 241; Smith v. Ry., 111 Mo. App. 410, 85 S. W. 972; Gerren v. Ry., 60 Mo. 405; Railway v. Willis, 93 Ind. 507.] While by the authorities it is settled that the railroads are required by the statute to fence only such portions of the road as pass through inclosed or cultivated or uninclosed lands out-

side of incorporated towns and cities and outside of platted towns in which streets are dedicated to public use, except the crossing of public and statutory private roads, and that they are exempt from being held for the penalty under the double damage statute for any injury to stock occurring on their roads at their necessary station and depot grounds, it is equally well settled that they may be held in a common law action for damages accruing to stock injured inside such necessary station and depot grounds and upon public and statutory private crossings which is the result of the careless and negligent conduct of the railroad employees, agents or servants in operating the train. [Hill v. Ry., 121 Mo. 477, 26 S. W. 576; Goodwin v. Ry., 75 Mo. 73; Meyer v. Ry., 64 Mo. 542; Swearingen v. Ry., 64 Mo. 73; Schneider v. Ry., 75 Mo. 295; Hill v. Ry., 49 Mo. App. 521.] And it is equally well settled they may be held for what is commonly termed single damages, by way of distinguishing it from the double damage section, under section 2867, R. S. 1899, for stock killed at such point on the road as the company is not required by the statute on the one hand, to fence, and are not required on the other hand, by the decisions, to leave unfenced for the accommodation of the public, and therefore considered to be places which are not required to be, yet might be, fenced, without discommoding the public or imperiling the lives of railroad employees. The courts have recognized that there are such situations. Such a place has been judicially determined to exist where, inside of an incorporated town, there is a piece of territory in which there is neither streets nor alleys and which is remote from the depot and therefore the public travel and convenience would not be interrupted by fences. [Wymore v. Ry., 79 Mo. 247; Young v. Ry., 79 Mo. 336.] In event of stock being killed at such point, while a recovery would be denied therefor under the double damage section, as fencing is not required by the statute (Edwards v. Ry., 66 Mo. 567; Rhea v. Ry., 84 Mo. 345), yet it is held that as such place

is one at which the railroad might have fenced and failed to do so, a recovery could be had for single damages therefor under the arbitrary rule of section 2867, R. S. 1899. That section enacts an arbitrary rule to the effect that the owner of stock killed or injured by locomotive cars or carriages of the railroad, may recover the value of the animal without any proof of negligence on the part of the servants, agents or officers of the company, but it provides it shall not apply to an accident occurring on a portion of the road which may be inclosed by a lawful fence or in a crossing of a public highway where no fences are required under this section. It imposes no such obligation. But it is said that it was designed by this section to furnish an inducement to the roads to fence their tracks at such places as could be fenced without inconvenience to the public and danger to the employees where it was not deemed absolutely necessary by the Legislature to require them to fence and that in event stock was killed by reason of the failure to fence at such points, where they might lawfully have done so, then in an action for the value of such stock, proof of negligence is dispensed with thereunder as the law raises the inference of negligence. The owner has only to prove the killing and the law presumes carelessness. And that a prima facie case is made by showing ownership and the killing of the animal on the road at a point which might have been fenced without inconvenience or danger as above indicated, yet was left unfenced. [Tiarks v. Ry., 58 Mo. 45; Edwards v. Ry., 66 Mo. 567; Wymore v. Ry., 79 Mo. 247; Young v. Ry., 79 Mo. 336; Radcliffe v. Ry., 90 Mo. 127, 2 S. W. 277; Hillman v. Ry., 99 Mo. App. 271, 73 S. W. 220.]

The pleadings bring this case properly within the purview of the statute (sec. 2867, R. S. 1899) last above mentioned. We have thus noticed the adjudications under the two sections in order to determine for ourselves just what portions of the road are required to be fenced, what portions are required to be unfenced and what por-

tions may, but are not required to be, fenced as a matter of law, and with this enlightenment, apply the settled rules to the facts developed in the respondent's case in order that a true ascertainment as to whether or not his stock was killed at a point which is not required by law to be fenced. If so, he cannot recover; otherwise he can. Our conclusion is:

(a) That the railroads are not required to fence within the limits of incorporated towns nor are they permitted to fence such portions thereof as would obstruct streets and alleys.

(b) They are not required to fence within the limits of platted towns, whether incorporated or not, the streets of which are dedicated to public use, nor are they permitted to fence such portions of the road therein as would obstruct such dedicated streets and alleys.

(c) They are not required, nor are they permitted, to fence public road crossings and as under our statute, a statutory private road is free to public travel, they are not required nor are they permitted to fence such private road. [Walton v. Ry., 67 Mo. 56.]

(d) They are not required to fence at their depots or stations where it is necessary for the transaction of business with the public and the reception and discharge of freight and passengers that such place shall be left open, nor would they be permitted to fence so near their depot or station as to obstruct public streets.

(e) In the event the space permitted to remain unfenced for switches at their depots and stations not in incorporated or platted towns as above mentioned, is not more than is reasonably necessary for the convenient transaction of business with the public in the reception and discharge of freight and passengers, they are not required to build fences and cattle-guards so near the switch-head as to endanger the lives or limbs of their employees in working about the switch and passing to and from the trains.

113 app—7

On the last proposition we might add by way of illustration, that in a case where one-half mile was left open for switch limits, the cattle-guard being as a matter of course at the extreme end of the switch limits, and stock was killed beyond the switch and in the space unfenced between the switch and cattle-guard, and upon the trial it would appear that instead of one-half mile, one-fourth mile or less was all that was necessary for switch limits, it would not be a valid defense for the railroad to say that they could not have inclosed the spot at which the stock was killed by placing the cattle-guards nearer the switch, because to have done so would have imperiled the life and limb of the employees, for the law requires them to inclose all of that portion left unfenced, excluding the one-fourth mile or less, reasonably necessary to be left open for use as above indicated. The cases of Welsh v. Ry., 55 Mo. App. 599, Pearson v. Ry., 33 Mo. App. 543, Bean v. Ry., 20 Mo. App. 641 and Railway v. Willis, 93 Ind. 507 are illustrative.

The evidence in the case at bar shows that the station at Avert, if it be a station, where the stock was killed, was not an incorporated nor a platted town; there are no streets or alleys and there is no crossing of either public or statutory private roads. A recovery cannot be defeated on the score of any one of those propositions. These being eliminated, does the evidence show the killing to have taken place at the depot or station of the company where it was necessary for the transaction of business with the public in the reception and discharge of freight and passengers, that the space where they entered upon the track should be left open for the accommodation of the public, or safety of the trainmen, or both?

It is well settled law that the point at which the animal enters upon the right of way determines the liability or nonliability of the railroad and not the place where the stock is killed. [Hurd v. Chappell, 91 Mo. App. 317; Pearson v. Ry., 33 Mo. App. 543.] There is no evidence in the record as to where the stock entered upon the

track. In the absence of evidence to the contrary, the law presumes that it came upon the road where it was killed. [Hurd v. Chappell, 91 Mo. App. 317; Ellis v. Ry., 89 Mo. App. 241; Duke v. Ry., 39 Mo. App. 105; Kinion v. Ry., 39 Mo. App. 382; McGuire v. Ry., 23 Mo. App. 325; Pearson v. Ry., 33 Mo. App. 543; Jantzen v. Ry., 83 Mo. 171.] The proof shows the two cows were killed at some point inside the switch limits, not near the mill; no word in the record discloses how near or how far from the gravel pile where trains stopped to discharge freight and passengers. The evidence discloses that one hog was killed some distance south of the crossing, wherever that was, and one hog one hundred and fifty yards north thereof. The evidence fails to show where the crossing was located with reference to the gravel pile at which trains stopped; in fact there is nothing in the record from which we can determine just where this stock was killed with reference to what would be termed the station, if there was a station there, except the heifer which has heretofore been disposed of, and it would be going a long way indeed for us to hold that, as a matter of law, the railroad could leave open a full half mile as station grounds as necessary for the transaction of business with the public and the reception and discharge of freight and passengers at such a place as Avert, when the evidence shows very slight business transacted there.

In Duncan v. Ry., 111 Mo. App. 193, 85 S. W. 661, this court said: "The evidence is all one way that the ground on which the switch was laid is not open for use by the public. Was it at a depot or station? In Maghee v. Transportation Co., 45 N. Y. 514, 6 Am. Rep. 124, it was held that 'depot' was generally understood to be a place where a carrier is accustomed to receive merchandise, deposit it, and keep it ready for transportation and delivery, and, as applied to railroads, it is a place where passengers are received and deposited, and where freight is deposited for delivery. This definition was approved

in State v. R. R., 37 Conn. 153, and in Plunkett v. R. R., 79 Wis. 222, 48 N. W. 519. In Hill & Morris v. R. R. (Tex. Civ. App.), 75 S. W. 874, a 'depot' is defined as 'a railroad station.' The same ruling was made in Karnes v. Drake, 103 Ky. 134, 44 S. W. 444. In Railroad v. Smith (Ark.), 71 S. W. loc. cit. 948, it is said that a depot may be 'a house for the storage of freight and the accommodation of passengers, or it may be a place where railroad trains regularly come and stop for the convenience of passengers and for the purpose of receiving and discharging freight, or may include all of these things. . . . The term "depot" usually includes not only the idea of a stopping place, but also that of a building, or something of the kind, for the protection and convenience of passengers and freight.' In Mahaska v. Railroad, 28 Iowa, 437, it was held that a station at a coal bank where trains merely stopped to take or leave cars for purposes connected with its trade was not a depot, within a contract that defendant was to build but one other depot between two certain fixed points. In Hurt v. Ry., 39 Minn. 485, 40 N. W. 613; it was held that a mere flag station is not a depot; and in Anderson v. Stewart, 76 Wis. 43, 44 N. W. 1091, a similar ruling was made, and it was also held that where a railroad company took up its fences and put in cattle-guards at a place where it had maintained a flag station, after the laying out of the town plat, but did not keep any depot, depot master, or clerk, nor sell any tickets in the town, which consisted of two houses and a store, but merely took up freight there when flagged, as it did at any point on that portion of its road, it could not escape the liability for horses killed there for want of a fence, on the ground that such place constituted depot grounds."

We might add to what was said by Judge BLAND in the case last above cited that Webster's definition of depot, so far as applicable to this case, is as follows: "A warehouse for the storage, transfer and sometimes for the sale of goods, as a furniture depot, grain depot.

. . . The offices and rooms at a railroad terminus or station, as a passenger depot, a freight depot." We take it from the above that the word "depot" necessarily involves the idea of a building of some kind in connection with traffic. [State of Conn. v. Ry., 37 Conn. 153.] There was no depot at Avert. The grounds traversed by the switches and unfenced were therefore not depot grounds.

The question then resolves itself down to: were the grounds unfenced necessary station grounds? Just what is a station within the meaning of the law is a hard matter to determine. As this court said in Foster v. Railway, decided at this term of court but not yet reported: "We do not wish to be understood as holding that a depot building or the presence of a station agent is indispensible to constitute a station." After carefully investigating and devoting some thought to the subject, we are persuaded that what is essential to constitute a given place a station, is a question depending largely upon the facts of each case. In our opinion, it will not depend upon an office and agent being maintained, but depends more upon the business done, not with one or two or three individuals, firms or companies but with the public and whether or not trains stop regularly or on signal to receive and discharge passengers and freight and whether inducements are held out and accommodations afforded to the public to enter into reciprocal business relations.

Whether a depot exists in a given case or not, may be declared as a matter of law without much difficulty. No doubt in many cases certain places where extensive business is regularly carried on with the public where there are no depots, may be pronounced stations as a matter of law without difficulty. In other cases places claimed to be stations may be declared as a matter of law not to be such, as was done in the cases of Duncan v. Ry., 111 Mo. App. 193, 82 S. W. 661; Smith v. Railway, 111 Mo. App. 410, 85 S. W. 972, and Foster v. Rail-

way, supra. But there are many situations where good reasons seem to exist for declaring either way on the subject. In cases of this kind, the many small difficulties which seem to beset the subject renders it one in which no hard and fast rule can be formulated, and if it is a matter about which reasonable minds might differ, it might become a question of fact for the jury on the evidence adduced. As the evidence shows trains stopped on signal to receive and discharge passengers and that there was freight shipped in and out, even though in small quantities for those of the general public who desired, and the maintenance of a siding on which others than the mill, the public, loaded and shipped, it seems to us that this shows a willingness on the part of the railroad to do business at this point with the general public and that inducements in the way of side tracks, a gravel pile for a platform and the stoppage of trains when signalled, the reception and discharge of passengers, had been and were held out to the public to do business thereat, and that the public had accepted such proffered inducements is shown by the evidence and were doing business there although on a small scale. The quantum of business however, is not important if it be a regular business point with the public as above indicated. We think this would constitute a station within the meaning of the law. [State v. North Hampton Co., 37 Conn. 153; Anderson v. Railway, 16 Cann. L. T. 185; s. c., 27 Ont. Rep. 44; State ex rel. v. Railway, 12 S. Dak. 305.]

The evidence was to the effect that to have fenced the right of way at the mill would have rendered it inconvenient for the mill people. We are not concerned with this. The question with which the law is concerned is: was it necessary for the safety of the employees of the road and the convenience of the public and the road that the portion of the right of way on which the stock was killed should remain unfenced as station grounds? The law will not permit the railroad to leave unfenced, on the score of station grounds, more than is actually neces-

Acord v. Railroad.

sary for the safe and convenient transaction of the business to be done there. [Russell v. Ry., 26 Mo. App. 375; Johnson v. Ry., 27 Mo. App. 379.] One of the witnesses said on cross-examination, that it would be inconvenient for the people to get to the platform and to get off and on trains and handle their goods if it were fenced. This we know to be true as a matter of common knowledge. This scrap of testimony relates only to the platform or station, however. The evidence wholly fails to show that the stock was killed near the station. Had it shown this, we might be able to hold, as a matter of law, that such grounds immediately adjacent to the station even at a small place like Avert, could not be fenced without interfering with the convenience of both the public and the company and the safety of the employees as well. But in a case like this, where the evidence shows such slight business carried on at the station and where it is not of enough importance to build an office or station house, we cannot hold that to leave a full one-half mile unfenced was necessary to the transaction of business thereat. Simply because the railroad saw fit to leave one-half mile unfenced is no reason why a court should hold as a matter of law that it was necessary station grounds, for it is well settled that the railroads are not to arbitrarily determine for themselves the question of the necessity of the space they claim for station grounds and switches. As was said by Judge Phillips "This would put the lives and property of citizens at the descretion of the company's experts without contradiction or the right of judicial revision." [Johnson v. Ry., 27 Mo. App. 379; Straub v. Eddy, 47 Mo. App. 189.] The rule is well settled that what are necessary station grounds in a case like the one at bar, where stock is not killed immediately adjacent to the station, is a question of fact for the jury and not a question of law for the court. [Johnson v. Railway, 27 Mo. App. 371; Bean v. Ry., 20 Mo. App. 641; Straub v. Eddy, 47 Mo. App. 189; Pearson v. Ry., 33 Mo. App. 543; Brandenburg v. Ry., 44 Mo. App. 224;

Welsh v. Ry., 55 Mo. App. 599; Downey v. Ry., 94 Mo. App. 137, 67 S. W. 945; Smith v. Ry., 111 Mo. App. 410, 85 S. W. 972; Hillman v. Ry., 99 Mo. App. 271, 73 S. W. 220; 3 Elliott on Railroads, sec. 1194.] It is only where but one conclusion can be drawn from the evidence that it is a question for the court. [3 Elliott on Railroads, sec. 1194; Gross v. Ry., (Wis.) 65 N. W. R. 185.]

The question of necessary station grounds being one for the jury, the court did not err in refusing the several peremptory instructions requested by defendant and the judgment is therefore affirmed. All concur.